Camp Chicopee *v.* Eden, Appellant.

151

Argued January 26, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*William Fitzgerald,* of *Kelly, Balentine, Fitzgerald & Kelly,* with him *M. E. Simons* and *A. G. Rutherford,* for

appellant.—It is clear that a reservation of the right to flow Kline's Pond did not include a reservation of the disputed land under the pond for the reason that it does not say so, and for the further reason that such a reservation, if there is any ambiguity, should be construed most strongly against the grantor, Reynard, and in favor of the grantee, Burke: Klaer v. Ridgway, 86 Pa. 529; Sheffield Water Co. v. Tanning Co., 225 Pa. 614.

The fact that land is covered with water does not render its acquisition by adverse possession impossible: Fitzwater v. Fassett, 69 Pa. Superior Ct. 286; Altemus v. Long, 4 Pa. 254; Ament v. Wolf, 33 Pa. 331.

*N. S. Winnet,* with him *Homer Greene, Lester R. Male* and *B. I. DeYoung,* for appellee.—Defendant having accepted and placed on record a deed from his predecessor in title, excepting a certain parcel of land, cannot assert a claim of title by adverse possession, twenty-one years not having elapsed: Johns v. Johns, 244 Pa. 48; O'Boyle v. Kelly, 249 Pa. 13; Olwine v. Holman, 23 Pa. 279.

Adverse possession cannot be acquired to land covered with water where the alleged possessory. acts are performed on or in the water and not on the land itself: Gibbs v. Sweet, 20 Pa. Superior Ct. 275; McDermott v. Hoffman, 70 Pa. 31; Hole v. Rittenhouse, 37 Pa. 116; Adams v. Robinson, 6 Pa. 271; Wheeler v. Winn, 53 Pa. 122; Ewing v. Alcorn, 40 Pa. 492.

OPINION BY MR. JUSTICE SCHAFFER, March 16, 1931:

The plaintiff, Camp Chicopee, conducts a boy's camp in Wayne County. It owns a tract of land containing fifty acres. Its lands extend into Kline's Pond or lake, a natural body of water containing about thirty acres; some four acres of its lands are covered by the waters of the lake. On the opposite side of the lake there was, prior to September 15, 1861, a rectangular tract of seventy-five acres, which also extended into the pond and abutted in part against the fifty acre tract first men-

tioned, so that about fifteen acres of the seventy-five acre tract were also covered by the waters of the pond. On the date named, September 15, 1861, the seventy-five acre tract was owned by John Reynard, who on that day conveyed to William Bonesteel in fee so much of it as was covered with the waters of the pond, together with certain rights of flowage. On September 11, 1874, thirteen years later, John Reynard made a conveyance to Thomas Burke in fee, in which the entire seventy-five acre tract was fully described, the description including that part of the tract covered by the water of the pond. The deed contained the following exception, "Excepting and reserving from the southwest corner of said lot of land above described nineteen and one-half acres of land as surveyed by Albre Skinner and sold to Samuel Diby-ner by articles of agreement dated April 1, 1867. Also the right to flow Kline's Pond in accordance with privileges granted by deed to William Bonesteel." While this exception is somewhat ambiguous, it put upon the subsequent purchaser Burke and those claiming through him notice of the deed to Bonesteel and full inquiry as to what the grant to him embodied: Finley v. Glenn, 303 Pa. 131. An examination of the record of the deed to Bonesteel would have disclosed that he was the owner in fee of that part of the seventy-five acre tract beneath the waters of the lake. Bonesteel's title has become vested in plaintiff and Burke's title in defendant. In addition, the latter claims title by adverse possession to the land formerly owned by Bonesteel, all of which is under the lake, and to that part of the waters thereof which cover this land.

In the assertion of his claim, while a large number of boys in plaintiff's camp accompanied by officials and employees thereof, were in boats on that part of the lake granted to plaintiff, the defendant, accompanied by others, approached them in boats, and, with threatening and abusive language, ordered them to withdraw from that part of it. Asserting in the bill, which it shortly

thereafter filed, that the portion of the lake in question was a necessary part of its camp property, without the continuous use and enjoyment of which the camp could not be sucecssfully carried on, plaintiff asked an injunction restraining defendant from entering upon that portion of the lake belonging to plaintiff or interfering with its use thereof. A preliminary injunction was issued. Defendant answered, setting up his record title and claim by adverse possession. Exceptions were filed by plaintiff to the answer, to the effect that it was insufficient to raise an issue, as the record title pleaded showed defendant's grant to be subsequent to that of plaintiff, and that the alleged acts of adverse possession, if duly proven, were not sufficient to ripen into a title; and furthermore, title by adverse possession could not be acquired of land covered with water, since it was physically impossible to exercise, upon property of that character, such possessory acts as are required to give title by adverse possession. The court on hearing sustained the exceptions and made the preliminary injunction permanent; from the decree so ordering defendant appeals.

Plaintiff rested its case on its record title which is complete and antedates that of defendant. The only claim of title which defendant can urge is that of adverse possession. The possessory acts set up by defendant as giving him title are: That he caused the entire seventy-five acre tract to be assessed to him and paid taxes thereon. (This could not work a divestiture of Bonesteel's title: McDermott v. Hoffman, 70 Pa. 31; Coxe v. Deringer, 82 Pa. 236; Bear Valley Coal Co. v. Dewart, 95 Pa. 72.) That Burke built a fence on his line and extended it into the water of the pond so far as practicable and maintained it for the statutory period. This fence, however, was only a line fence, it enclosed nothing and could not in any way give notice of an adverse claim to the land. That Burke cut ice from the pond and fished and boated thereon during the statutory

period. As was observed by the able and experienced chancellor who heard the case, "It goes without saying that these are not such acts as would indicate any claim of ownership of the land on the part of the person performing them." An entry upon another man's lands to hunt or fish can never give title: Wheeler v. Winn, 53 Pa. 122. That Burke declared the property to be his and warned all persons from trespassing thereon without his permission. Such statements could not in any way prejudice the title of the vested owner of the property. That during the statutory period the record owner exercised no acts of ownership that could be held adverse to the claim of Burke. It is a novel proposition that the holder of a record title must from time to time make proclamation on every part of his land of his right thereto under penalty that he will lose it to an intruder if he does not. We said in Muzzio v. Steele, 279 Pa. 226, quoting from Mr. Justice DEAN in an earlier case, that an owner of a coal mine does not have to live in it in order to prevent the acquiring of a title thereto by adverse possession, and the same thing can be said with equal propriety and force as to the lands covered by the waters of a lake. The owner thereof does not have to become amphibious and dwell part of the time in the lake in order to retain his title thereto. Dougherty v. Welshans, 233 Pa. 121, presents a somewhat analagous situation and lays down the like principle, the land there being wild and mountainous.

None of the things set up by defendant nor all of them put together meet the requirements of the law to obtain title by adverse possession. "Where a party relies on the statute of limitations, as giving him a positive title, one with which he can successfully assail even the holder of the legal title in possession, he ought to be held to show all the elements constituting it conjoined and united in his hands; and that he, or those under whom he claims, entered into the possession of the premises, claiming the same as and for his own property, and that

as such he has held actual, adverse, continued, visible, notorious, distinct, and hostile possession thereof for the full period of twenty-one years": Johns v. Johns, 244 Pa. 48, 56; O'Boyle v. Kelly, 249 Pa. 13, 17; Stark v. Penna. Coal Co., 241 Pa. 597; Boyer v. Lengel, 224 Pa. 357.

Another circumstance appearing in the record should be noted as it raises a barrier to defendant's assertion of title. In the deed to Burke, defendant's predecessor, there is an exception in favor of Bonesteel, plaintiff's predecessor. "The grantee, by accepting a deed containing an exception of certain lands previously sold and conveyed to another and then entering into possession of the land thus excepted, will be deemed in law to have entered in subserviency to the title of the grantee of the excepted land, and to continue to hold in subserviency thereto, unless he can establish the contrary by some unequivocal act or claim of title in himself": 2 C. J., page 147, section 256; Olwine v. Holman, 23 Pa. 279.

We need not determine, because not necessary to the decision of the case, whether adverse possession can be acquired to land covered by water where the alleged possessory acts are performed on or in the water and not upon the land itself.

The decree is affirmed at appellant's cost.