Miller et al. *v*. Lutheran Conference and Camp
Association, Appellant.

Argued April 13, 1938. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Joseph First,* with him *Alfred F. Conard, Murdoch, Paxson, Kalish & Green,* and *W. B. Eilenberger,* of *Eilenberger & Huffman,* for appellant.

*F. B. Holmes,* with him *C. C. Shull* and *C. D. Shull,* for appellees.

OPINION BY MR. JUSTICE STERN, June 30, 1938:

This litigation is concerned with interesting and somewhat novel legal questions regarding rights of boating, bathing and fishing in an artificial lake.

Frank C. Miller, his brother Rufus W. Miller, and others, who owned lands on Tunkhannock Creek in Tobyhanna Township, Monroe County, organized a corporation known as the Pocono Spring Water Ice Company, to which, in September, 1895, they made a lease for a term of ninety-nine years of so much of their lands as would be covered by the backing up of the water as a result of the construction of a 14-foot dam which they proposed to erect across the creek. The company was to have "the exclusive use of the water and its privileges." It was chartered for the purpose of "erecting a dam . . ., for pleasure, boating, skating, fishing and the cutting, storing and selling of ice." The dam was built, forming "Lake Naomi," somewhat more than a mile long and about one-third of a mile wide.

By deed dated March 20, 1899, the Pocono Spring Water Ice Company granted to "Frank C. Miller, his heirs and assigns forever, the exclusive right to fish and boat in all the waters of the said corporation at Naomi

Pines, Pa." On February 17, 1900, Frank C. Miller (his wife Katherine D. Miller not joining) granted to Rufus W. Miller, his heirs and assigns forever, "all the one-fourth interest in and to the fishing, boating, and bathing rights and privileges at, in, upon and about Lake Naomi . . . ;. which said rights and privileges were granted and conveyed to me by the Pocono Spring Water Ice Company by their indenture of the 20th day of March, A. D. 1899." On the same day Frank C. Miller and Rufus W. Miller executed an agreement of business partnership, the purpose of which was the erection and operation of boat and bath houses on Naomi Lake and the purchase and maintenance of boats for use on the lake, the houses and boats to be rented for hire and the net proceeds to be divided between the parties in proportion to their respective interests in the bathing, boating and fishing privileges, namely, three-fourths to Frank C. Miller and one-fourth to Rufus W. Miller, the capital to be contributed and the losses to be borne in the same proportion. In pursuance of this agreement the brothers erected and maintained boat and bath houses at different points on the lake, purchased and rented out boats, and conducted the business generally, from the spring of 1900 until the death of Rufus W. Miller on October 11, 1925, exercising their control and use of the privileges in an exclusive, uninterrupted and open manner and without challenge on the part of anyone.

Discord began with the death of Rufus W. Miller, which terminated the partnership. Thereafter Frank C. Miller, and the executors and heirs of Rufus W. Miller, went their respective ways, each granting licenses without reference to the other. Under date of July 13, 1929, the executors of the Rufus W. Miller estate granted a license for the year 1929 to defendant, Lutheran Conference and Camp Association, which was the owner of a tract of ground abutting on the lake for a distance of about 100 feet, purporting to grant to defendant, its members, guests and campers, permission to boat, bathe

and fish in the lake, a certain percentage of the receipts therefrom to be paid to the estate. Thereupon Frank C. Miller and his wife, Katherine D. Miller, filed the present bill in equity,[1] complaining that defendant was placing diving floats on the lake and "encouraging and instigating visitors and boarders" to bathe in the lake, and was threatening to hire out boats and canoes and in general to license its guests and others to boat, bathe and fish in the lake.[2] The bill prayed for an injunction to prevent defendant from trespassing on the lands covered by the waters of the lake, from erecting or maintaining any structures or other encroachments thereon, and from granting any bathing licenses. The court issued the injunction.

It is the contention of plaintiffs that, while the privileges of boating and fishing were granted in the deed from the Pocono Spring Water Ice Company to Frank C. Miller, no *bathing* rights were conveyed by that instrument. In 1903 all the property of the company was sold by the sheriff under a writ of fi. fa. on a mortgage bond which the company had executed in 1898. As a result of that sale the Pocono Spring Water Ice Company was entirely extinguished, and the title to its rights

---

[1] Plaintiffs died during the pendency of the suit and their executors were substituted as parties plaintiff.

[2] In 1904 Frank C. Miller, Rufus W. Miller and others had conveyed to the Pocono Pines Assembly and Summer Schools the lot of ground which by mesne conveyances was subsequently acquired by defendant. In the deed there was reserved the right to build a road 100 feet in width along the lake front, and the parties also entered into an agreement contemplating the construction of a similar strip around the entire lake for purposes of a park road and pleasure ground. This development apparently was never carried out, but in the present bill plaintiffs alleged that defendant threatened to build bath houses and erect a diving board on this strip, and prayed injunctive relief from any violation of the restrictions in the deed and the agreement. This phase of the litigation, however, is apparently of minor importance and is therefore not discussed herein.

and property came into the ownership of the Pocono Pines Ice Company, a corporation chartered for "the supply of ice to the public."[3]  In 1928 the title to the property of the Pocono Pines Ice Company became vested in Katherine D. Miller.  Plaintiffs therefore maintain that the bathing rights, never having passed to Frank C. Miller, descended in ownership from the Pocono Spring Water Ice Company through the Pocono Pines Ice Company to plaintiff Katherine D. Miller, and that Frank C. Miller could not, and did not, give Rufus W. Miller any title to them.  They further contend that even if such bathing rights ever did vest in Frank C. Miller, all of the boating, bathing and fishing privileges were easements in gross which were inalienable and indivisible, and when Frank C. Miller undertook to convey a one-fourth interest in them to Rufus W. Miller he not only failed to transfer a legal title to the rights but, in attempting to do so, extinguished the rights altogether as against Katherine D. Miller, who was the successor in title of the Pocono Spring Water Ice Company.  It is defendant's contention, on the other hand, that the deed of 1899 from the Pocono Spring Water Ice Company to Frank C. Miller should be construed as transferring the bathing as well as the boating and fishing privileges, but that if Frank C. Miller did not obtain them by grant he and Rufus W. Miller acquired them by prescription, and that all of these rights were alienable and divisible even if they be considered as easements in gross, although they might more properly, perhaps, be regarded as licenses which became irrevo-

---

[3] There being some question as to whether the 99-year leasehold interest passed under the sheriff's levy and sale, Frank C. Miller, Rufus W. Miller, and others, in July, 1911, confirmed the title thereto in the Pocono Pines Ice Company, and in September, 1911, the Pocono Pines Ice Company confirmed to Frank C. Miller the boating and fishing rights which had been granted to him in 1899 by the Pocono Spring Water Ice Company.

cable because of the money spent upon their develop-
ment by Frank C. Miller and Rufus W. Miller.[4]

Plaintiffs have filed a motion to dismiss the present
appeal on the ground that defendant's license from the
estate of Rufus W. Miller was only for the year 1929,
and in 1930 defendant constructed another lake on a
property of its own, distant about one-half mile from
Lake Naomi, and has discontinued the trespasses which
are the subject of the bill; it is claimed that the ques-
tions involved have thus become moot. This motion
cannot be sustained. The controversy may flare up
again if defendant obtains another license from the
Rufus W. Miller estate, and under such circumstances
the court will entertain an appeal: *Werner v. King,* 310
Pa. 120, 124, 125. Moreover, the decree of the court be-
low would render defendant ineligible to obtain a li-
cense from the estate hereafter: *Revocation of Wolf's
License,* 115 Pa. Superior Ct. 514, 522. Nor is the ques-
tion moot merely because, since the institution of the
proceedings, defendant has not persisted in the actions
complained of: *Commonwealth v. Benton Township
School District,* 277 Pa. 13, 17.

Coming to the merits of the controversy, it is initially
to be observed that no boating, bathing or fishing rights

---

[4] Shortly before the present action was begun the executors of
the Rufus W. Miller estate brought a bill in equity against Frank
C. Miller, as surviving partner, for an accounting of the assets of
the partnership, and the attempt was there made to raise the ques-
tions which are now presented to this court. That case went to the
Superior Court: *Miller v. Miller,* 118 Pa. Superior Ct. 38. An
account was stated covering the relations between the parties
down to October 11, 1925, the date of the death of Rufus W. Miller,
from which it appeared he was at that time indebted, according to
the partnership accounts, to Frank C. Miller, and accordingly the
plaintiffs in that action were not entitled to receive anything from
the partnership assets. The Superior Court held that the boating,
bathing and fishing rights had not been conveyed by the two
Millers to the partnership, but remained in their common owner-
ship, and therefore could not be adjudicated in those proceedings.

can be, or are, claimed by defendant as a riparian owner. Ordinarily, title to land bordering on a navigable stream extends to low water mark subject to the rights of the public to navigation and fishery between high and low water,[5] and in the case of land abutting on creeks and non-navigable rivers to the middle of the stream, but in the case of a non-navigable lake or pond where the land under the water is owned by others, no riparian rights attach to the property bordering on the water, and an attempt to exercise any such rights by invading the water is as much a trespass as if an unauthorized entry were made upon the dry land of another: *Baylor v. Decker*, 133 Pa. 168; *Smoulter v. Boyd*, 209 Pa. 146, 152; *Gibbs v. Sweet*, 20 Pa. Superior Ct. 275, 283; *Fuller v. Cole*, 33 Pa. Superior Ct. 563; *Cryer v. Sawkill Pines Camp, Inc.*, 88 Pa. Superior Ct. 71.

It is impossible to construe the deed of 1899 from the Pocono Spring Water Ice Company to Frank C. Miller as conveying to the latter any privileges of bathing. It is clear and unambiguous. It gives to Frank C. Miller the exclusive right to *fish and boat*. Expressio unius est exclusio alterius. No *bathing* rights are mentioned. This omission may have been the result of oversight or it may have been deliberate, but in either event the legal consequence is the same. It is to be noted that the mortgagee to whom the company mortgaged all its property in 1898 executed in 1902 a release of the fishing and boating rights to the company and to Frank C. Miller, thus validating the latter's title to these rights under the company's deed of 1899, but in this release also the bathing rights are omitted.

But, while Frank C. Miller acquired by grant merely boating and fishing privileges, the facts are amply sufficient to establish title to the bathing rights by prescription. True, these rights, not having been granted in connection with, or to be attached to, the ownership of

---

[5] *Black v. American International Corporation*, 264 Pa. 260, 262.

any land, were not easements appurtenant but in gross. There is, however, no inexorable principle of law which forbids an adverse enjoyment of an easement in gross from ripening into a title thereto by prescription. In *Tinicum Fishing Co. v. Carter*, 61 Pa. 21, it was questioned whether a fishing right could be created by prescription,[6] although there is an intimation (p. 40) that some easements in gross might so arise if there be evidence sufficient to establish them. Certainly the casual use of a lake during a few months each year for boating and fishing could not develop into a title to such privileges by prescription. But here the exercise of the bathing right was not carried on sporadically by Frank C. Miller and his assignee Rufus W. Miller for their personal enjoyment but systematically for commercial purposes in the pursuit of which they conducted an extensive and profitable business enterprise. The circumstances thus presented must be viewed from a realistic standpoint. Naomi Lake is situated in the Pocono Mountains district, has become a summer resort for campers and boarders, and, except for the ice it furnishes, its bathing and boating facilities are the factors which give it its prime importance and value. They were exploited from the time the lake was created, and are recited as among the purposes for which the Pocono Spring Water Ice Company was chartered. From the early part of 1900 down to at least the filing of the present bill in 1929, Frank C. Miller and Rufus W. Miller openly carried on their business of constructing and operating bath houses and licensing individuals and camp associations to use the lake for bathing. This was known to the stockholders of the Pocono Spring Water Ice Company and necessarily also to Katherine D. Miller, the wife of Frank C. Miller; no objection of any kind was made, and Frank C. Miller and Rufus W. Miller were encouraged to expend large sums of money

---

[6] See also *Gibbs v. Sweet*, 20 Pa. Superior Ct. 275, 283-286.

in pursuance of the right of which they considered and asserted themselves to be the owners. Under such circumstances it would be highly unjust to hold that a title by prescription to the bathing rights did not vest in Frank C. Miller and Rufus W. Miller which is just as valid, as far as Katherine D. Miller is concerned, as that to the boating and fishing rights which Frank C. Miller obtained by express grant.

We are thus brought to a consideration of the next question, which is whether the boating, bathing and fishing privileges were assignable by Frank C. Miller to Rufus W. Miller. What is the nature of such rights? In England it has been said that easements in gross do not exist at all, although rights of that kind have been there recognized. In this country such privileges have sometimes been spoken of as licenses, or as contractual in their nature, rather than as easements in gross. These are differences of terminology rather than of substance. We may assume, therefore, that these privileges are easements in gross, and we see no reason to consider them otherwise. It has uniformly been held that a profit in gross—for example, a right of mining or fishing—may be made assignable: *Funk v. Haldeman,* 53 Pa. 229; *Tinicum Fishing Co. v. Carter,* 61 Pa. 21, 39; see cases cited 19 C. J. 870, note 25. In regard to easements in gross generally, there has been much controversy in the courts and by textbook writers and law students as to whether they have the attribute of assignability. There are dicta in Pennsylvania that they are non-assignable: *Tinicum Fishing Co. v. Carter,* supra, 38, 39; *Lindenmuth v. Safe Harbor Water Power Corporation,* 309 Pa. 58, 63, 64; *Commonwealth v. Zimmerman,* 56 Pa. Superior Ct. 311, 315, 316. But there is forcible expression and even definite authority to the contrary: *Tide Water Pipe Co. v. Bell,* 280 Pa. 104, 112, 113; *Dalton Street Railway Co. v. Scranton,* 326 Pa. 6, 12. Learned articles upon the subject are to be found in 32 Yale Law Journal 813; 38 Yale Law Journal 139; 22 Michigan

Law Review 521; 40 Dickinson Law Review 46. There does not seem to be any reason why the law should prohibit the assignment of an easement in gross if the parties to its creation evidence their intention to make it assignable. Here, as in *Tide Water Pipe Company v. Bell,* supra, the rights of fishing and boating were conveyed to the grantee—in this case Frank C. Miller—"his heirs and assigns," thus showing that the grantor, the Pocono Spring Water Ice Company, intended to attach the attribute of assignability to the privileges granted. Moreover, as a practical matter, there is an obvious difference in this respect between easements for personal enjoyment and those designed for commercial exploitation; while there may be little justification for permitting assignments in the former case, there is every reason for upholding them in the latter.

The question of assignability of the easements in gross in the present case is not as important as that of their divisibility. It is argued by plaintiffs that even if held to be assignable such easements are not divisible, because this might involve an excessive user or "surcharge of the easement" subjecting the servient tenement to a greater burden than originally contemplated. The law does not take that extreme position. It does require, however, that, if there be a division, the easements must be used or exercised as an entirety. This rule had its earliest expression in *Mountjoy's Case,* which is reported in Co. Litt. 164b, 165a. It was there said, in regard to the grant of a right to dig for ore, that the grantee, Lord MOUNTJOY, "might assign his whole interest to one, two, or more; but then, if there be two or more, they could make no division of it, but work together with one stock." In *Caldwell v. Fulton,* 31 Pa. 475, 477, 478, and in *Funk v. Haldeman,* 53 Pa. 229, that case was followed, and it was held that the right of a grantee to mine coal or to prospect for oil might be assigned, but if to more than one they must hold, enjoy and convey

the right as an entirety, and not divide it in severalty.[7]
There are cases in other jurisdictions which also approve
the doctrine of *Mountjoy's Case,* and hold that a mining
right in gross is essentially integral and not susceptible
of apportionment; an assignment of it is valid, but it
cannot be aliened in such a way that it may be utilized
by grantor and grantee, or by several grantees, separate-
ly; there must be a joint user, nor can one of the ten-
ants alone convey a share in the common right: *Grubb
v. Baird,* Federal Case No. 5849 (Circuit Court, Eastern
District of Pennsylvania); *Harlow v. Lake Superior
Iron Co.,* 36 Mich. 105, 121; *Stanton v. T. L. Herbert &
Sons,* 141 Tenn. 440, 211 S. W. 353.

These authorities furnish an illuminating guide to the
solution of the problem of divisibility of profits or ease-
ments in gross. They indicate that much depends upon
the nature of the right and the terms of its creation, that
"surcharge of the easement" is prevented if assignees
exercise the right as "one stock," and that a proper
method of enjoyment of the easement by two or more
owners of it may usually be worked out in any given in-
stance without insuperable difficulty.

In the present case it seems reasonably clear that in
the conveyance of February 17, 1900, it was not the in-
tention of Frank C. Miller to grant, and of Rufus W.
Miller to receive, a separate right to subdivide and sub-
license the boating, fishing and bathing privileges on
and in Lake Naomi, but only that they should together
use such rights for commercial purposes, Rufus W.
Miller to be entitled to one-fourth and Frank C. Miller
to three-fourths of the proceeds resulting from their
combined exploitation of the privileges. They were to

---

[7] In *Funk v. Haldeman* it was added (p. 246) that the ordinary
legal effect of the grant could be controlled by express agreement
of the parties; there the grantor was held to have given the gran-
tee the power to assign a right of profit à prendre to be exercised
and enjoyed by the assignees in severalty. For a similar case see
*Chandler v. Hart,* 161 Cal. 405, 119 Pac. 516.

hold the rights, in the quaint phraseology of *Mountjoy's Case,* as "one stock." Nor do the technical rules that would be applicable to a tenancy in common of a corporeal hereditament apply to the control of these easements in gross. Defendant contends that, as a tenant in common of the privileges, Rufus W. Miller individually was entitled to their use, benefit and possession and to exercise rights of ownership in regard thereto, including the right to license third persons to use them, subject only to the limitation that he must not thereby interfere with the similar rights of his co-tenant. But the very nature of these easements prevents their being so exercised, inasmuch as it is necessary, because of the legal limitations upon their divisibility, that they should be utilized in common, and not by two owners severally, and, as stated, this was evidently the intention of the brothers.

Summarizing our conclusions, we are of opinion (1) that Frank C. Miller acquired title to the boating and fishing privileges by grant and he and Rufus W. Miller to the bathing rights by prescription; (2) that he made a valid assignment of a one-fourth interest in them to Rufus W. Miller; but (3) that they cannot be commercially used and licenses thereunder granted without the common consent and joinder of the present owners, who with regard to them must act as "one stock." It follows that the executors of the estate of Rufus W. Miller did not have the right, in and by themselves, to grant a license to defendant.

The decree is affirmed; costs to be paid by defendant.