Loughran *v.* Matylewicz, Appellant.

Argued April 17, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*S. A. Davis,* with him *Raymond Bialkowski* and *Bialkowski, Bialkowski & Bialkowski,* for appellants.

*J. Julius Levy,* with him *Thomas J. Foley* and *Leonard L. Silverstein,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, June 27, 1951:

William V. Loughran, appellee, on August 11, 1947, instituted this action in equity against John F. and Elizabeth B. Matylewicz, appellants, to restrain them from interfering with his lawful possession of Baylor's Pond in Lackawanna County. The chancellor granted the relief prayed for and appellants take this appeal from the order of the court *en banc* dismissing their exceptions to the decree *nisi* and making the injunction permanent.

Appellee claimed ownership in fee of the land covered by the waters known as Baylor's Pond and charged appellants, record owners in fee simple of land bordering the pond, with trespassing by attempting to commercialize the pond and make it a public amusement

center. Appellants took title to their property March 14, 1918, and contend that by adverse commercial use from that time they have established an easement by prescription. Appellee's possession dates from October 17, 1944, in which year he caused to be reconstructed a dam about two feet high at the outlet of the pond to prevent the escape of fish with which it was stocked. In addition, since the time he came into possession, appellee has spent $25,000 to $30,000 in improvements to his property. It does not appear that appellants spent any sums of money developing a boating, bathing and fishing business.

From the time they took possession of the property bordering the pond, appellants have had for hire a parking lot, a picnic ground, and from one to four boats. These facilities have been hired to others only sporadically. Appellants kept no records of receipts of reservations and were unable to show that more than a few persons or groups had used their facilities, in the 21 years following their acquisition of the property.

Appellants contend that (1) appellee does not own the land beneath the pond, (2) their commercial uses for more than 21 years created an easement by prescription in them over the pond, and (3) since a portion of the pond now covers their land and swimming hole as a consequence of a rise in the water level of the pond following the reconstruction of the dam, they should not be enjoined from using their own property.

Appellants argue that appellee does not have good title to the land above which the pond lies, but as found by the chancellor, appellee owned the pond and the land underneath it by virtue of a "regularly connected" title stemming from William Baylor, who acquired the property from the Commonwealth in 1869. Aside from this evidenced chain of title, appellee's predecessor in title, William Baylor, established his ownership of the pond

against appellants' predecessor in title in *William Baylor v. W. S. Decker, et al.,* 133 Pa. 168, 19 A. 351. In that case the defendants attempted to establish their right to fish in the waters of the pond and challenged Baylor's title. The Court there said: "The plaintiff below established his right to the pond in question, and it is a mistake to suppose that the public or the defendants have the right to fish there at pleasure." Appellants urge that *Baylor v. Decker,* supra, is not *res judicata* as to the question of appellee's title. It is nonetheless true that Baylor's ownership of the pond was there in question and that the plaintiff and some of the defendants were privies in estate to appellant and appellee. *Bowers' Estate,* 240 Pa. 388, 87 A. 711, clearly states that the rule of *res judicata* applies with the same strictness where the cause of action, although not technically the same, is so related to the cause of action in the prior litigation that the same matter essential to recovery in the second was determined in the first. And see *Ottinger v. Walling,* 335 Pa. 77, 5 A. 2d 801; *Wallace's Estate,* 316 Pa. 148, 174 A. 397. That the first suit was at law and the next in equity is not material in the application of the rule of *res judicata.* The underlying purpose of the doctrine of *res judicata* is more than merely to serve the interest of one who relies on it; rather, it is a matter of public policy based on the principle that the general welfare requires litigation not to be interminable. *State Hospital for Criminal Insane v. Consolidated Water Supply Co.,* 267 Pa. 29, 110 A. 281; *Baroutsis v. Gregory,* 154 Pa. Superior Ct. 136, 140, 35 A. 2d 559. The lower court in the instant case said, with ample evidence to sustain its finding, that appellee and his predecessors in title have at all times exercised lawful ownership and peaceful possession of the pond.

Appellants' contention that they established an easement in gross over the waters of the pond does not call

into question appellee's title to the pond or the land under it. An easement in gross is a mere personal interest in, or right to use, the *land of another*. The chancellor's findings of fact in this regard sustained by the court *en banc* also appear to be well supported by evidence. There was evidence to show that a former owner, predecessor in title to appellee, customarily warned off those who trespassed on the pond at least until about 1934. It appears also that appellants had only one old boat on the premises until about 1947 and that three of the four boats held by appellants for rental were bought by them in 1947. It does not appear that appellants at any time attempted to enclose any portion of the land with fences, barriers or any other structures, nor that appellee or his predecessors should have known or had notice that appellants were using the lake under a claim of right.

In *Baylor v. Decker,* supra, involving the predecessors in title of the parties here, it was said that mere ownership of a strip of land bordering the pond gave no rights of ownership in the pond itself. *A fortiori* it would not enable such shore owners to give others a license to fish there. It is clear that the mere fact that a man is owner of a contiguous piece of property, whether land or water, does not confer on him a right to trespass on the land or water of his neighbor.

The rule is clearly stated in *Miller v. Lutheran Conference and Camp Association,* 331 Pa. 241, 247, 200 A. 646, where Mr. Justice Stern said: "in the case of a non-navigable lake or pond where the land under the water is owned by others, no riparian rights attach to the property bordering on the water, and an attempt to exercise any such rights by invading the water is as much a trespass as if an unauthorized entry were made upon the dry land of another:", and that "the casual use of a lake during a few months each year for boat-

ing and fishing could not develop into a title to such privileges by prescription." In that case bathing privileges were granted, bath and boathouses extending into the water were erected, part of the lake was fenced off, and in the winter ice was cut for commercial use, so that a commercial business was notoriously and continually conducted for more than 21 years. Here there was only occasional use of the property for picnics and swimming purposes and sporadic rental of boats for fishing. Appellants said there was ice skating without charge on the pond in the winter time and a couple of times someone fished through the ice. It appears clearly that appellants' use was not adverse, continued, visible, notorious, distinct and hostile so as to ripen into a prescriptive right giving them title to any portion of the lake or an easement permitting their use of the pond for any purpose without the consent of the appellee.

Appellants contend that by virtue of the reconstructed dam at the outlet of the pond, some of their land was overflowed and as a result an order restraining their use of the pond limits their use of their own land and a swimming pool thereon. Appellee reconstructed the dam to a height of about two feet in order to keep fish from escaping. He did this with the advice and consent of the Department of Forests and Waters of the Commonwealth, and an official State report on the pond indicates that in 1913 the original dam was six feet high. Sometime between that year and about 1921 the center section of the dam was destroyed. Certainly the construction of a two-foot dam would not raise the pond beyond the level previously established with a six-foot dam. It was not contested that at the time the survey was made, showing that the water of the pond had allegedly encroached from 10 to 71 feet on appellants' land, the creek, which is connected both at the inlet and outlet of the pond, was in a swollen

condition because of heavy rains. The swimming pool that appellants contend was covered by the pond's higher waters and the commercial use of which has been enjoined, is merely a portion of the pond itself from which the weeds were cut.

It is clear that there was here only casual and sporadic use of the pond by appellants, and such could never ripen into an adverse possession or easement in gross. The holder of a record title need not from time to time make a proclamation on every part of his land of his right to it under penalty that he will lose it to an intruder if he does not. "The owner thereof does not have to become amphibious and dwell part of the time in the lake in order to retain his title thereto." *Camp Chicopee v. Eden,* 303 Pa. 150, 154 A. 305.

There appears no compelling reason to disturb either the findings of the chancellor or the order of the court below.

Decree affirmed at appellants' cost.