J-A06011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KEEGAN LAND DEVELOPMENT CORP. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES LAGANA ; LAGANA | : | |
| CONSTRUCTION SERV.; LAGANA | : | |
| ENTERPRISES; JIM LAGANA | : | No. 880 MDA 2018 |
| PLUMBING & HEATING CO.; LAGANA | : | |
| SUPPLY CO., INC., HAZELTON CITY | : | |
| WATER DEPARTMENT AND BARBARA | : | |
| CARMADELLA, | : | |
| | : | |
| | : | |
| APPEAL OF: JAMES LAGANA; | : | |
| LAGANA CONSTRUCTION SERV.; | : | |
| LAGANA ENTERPRISES; JIM LAGANA | : | |
| PLUMBING & HEATING CO.; LAGANA | : | |
| SUPPLY CO.,INC. | : | |

Appeal from the Order Entered April 27, 2018
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2006-2995

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI\*, J.

MEMORANDUM BY OTT, J.:                **FILED AUGUST 12, 2019**

James Lagana, Lagana Construction Serv., Lagana Enterprises, Jim Lagana Plumbing & Heating Co., and Lagana Supply Co., Inc. (collectively "Lagana"), appeal the order entered April 27, 2018, in the Luzerne County Court of Common Pleas, enjoining Lagana from any future obstruction of the use of an easement by Keegan Land Development Corp. ("Keegan") without its express consent.  On appeal, Lagana argues the trial court erred in determining:  (1) the easement did not transfer to Lagana when he purchased

---

\*   Retired Senior Judge assigned to the Superior Court.

the property from the original grantees; (2) Lagana was not an assign of the original grantees; and (3) Lagana was not entitled to summary judgment when Keegan failed to describe the encroachment with the required degree of specificity. For the reasons below, we affirm the order of the trial court, albeit on a different basis, and remand for further proceedings.[1]

We have garnered the facts and procedural history underlying this dispute from the trial court's opinion, Keegan's complaint, and the trial transcript. *See* Trial Court Opinion, 4/27/2018, at 5-7; Complaint 8/17/2016, at ¶¶ 7-35; N.T., 10/25/2017, at 1-129. In June of 1965, Keegan purchased a 48.51 acre parcel of land, located in Hazle and Butler Townships, Luzerne County, from Arthur and Edna Hess. Most of the parcel is situated over a mountainside. The western border of the property sits east of a pavement now identified as Gabriel Street. Dominick and Ann Matonte owned the parcel of land adjacent to that western boundary of the Keegan property.[2] On December 6, 1976, Keegan granted to the Matontes, as well as "their heirs and assigns, the perpetual right-of-way and easement" over .303 acres of its land for "ingress, egress, and regress." Grant of Right-of-Way, 12/6/1976. The trial court described the easement as "twenty (20) feet by six-hundred

_____

[1] "This Court can affirm the trial court on any valid basis." *D.G. v. D.B.*, 91 A.3d 706, 712 n.3 (Pa. Super. 2014).

[2] The Matontes are the aunt and uncle of John Keegan, who is Vice President and a shareholder of Keegan Land Development Corporation. *See* N.T., 10/25/2017, at 10.

sixty (660) feet along the western boundary of [Keegan's] parcel adjacent to the parcel owned by [the Matontes]" and extending in "a northerly direction from what is now the intersection of Center Street and Gabriel Street." Trial Court Opinion, 4/27/2018, at 5. Although the easement was not paved when it was granted, the Matontes subsequently improved the easement "into a twenty (20) foot wide dirt road." *Id.* at 6.

On May 31, 1988, the Matontes deeded two parcels of land to Lagana,[3] including the parcel bordering Keegan's property. There is no mention of the easement in the deed. *See id.* Hazle Township later paved part of the easement, which it is now identified as Gabriel Street, from the intersection of Center Street to the intersection of Schan Street. Lagana subdivided his property and constructed townhomes. He later paved the portion of Gabriel Street from Schan Street to forty feet beyond North Butler Terrace to provide access for the townhomes. *See id.*; N.T., 10/25/2017, at 83-88. It merits mention that in subsequent deeds granted to the various Lagana enterprises, and in a plot plan submitted to the Butler Township Zoning Commission, the right-of-way was described as being 30 feet wide, rather than 20 feet wide.[4] *See* Complaint, 8/17/2006, at ¶¶ 18-21. Furthermore, in 2003, Lagana

---

[3] The Matontes are also the aunt and uncle of James Lagana, who is the President of the Lagana companies that are named in this appeal. Lagana and Keegan are cousins. *See* N.T., 10/25/2017, at 75, 78.

[4] At trial, Lagana admitted that was an error, and the easement was only 20 feet wide. *See* N.T., 10/25/2017, at 88-89.

granted the Hazelton Water Authority a perpetual easement and right-of-way in the 20-foot easement to provide water service to the townhome developments. *See id.* at Exhibit G, Grant of Perpetual Easement and Right-Of-Way, 2/13/2003. The water authority later installed water lines under Gabriel Street and repaved the land. *See* Trial Court Opinion, 4/27/2018, at 7. "A manhole was [also] built into the paved easement now identified as Gabriel Street to allow Keegan [] access should it choose to develop the parcel that it owns." *Id.*

Keegan initiated this action by writ of summons filed on March 13, 2006. On August 17, 2006, Keegan filed a complaint in ejectment, seeking an order directing Lagana to remove the paved portion of the easement, as well as landscaping and parking spaces obstructing the right-of-way.[5] *See* Complaint, 8/17/2006, at 9. It also sought an order enjoining Lagana from "any future obstruction … of Keegan's use of the easement over the Keegan's parcel." *Id.* The case finally proceeded to a non-jury trial on October 25, 2017. On April 26, 2018, the trial court entered a decision in favor of Keegan. Specifically, the court concluded: (1) it could "generally geographically place the adjacent Keegan Parcel and Matonte Parcel" and the parties do not dispute

---

[5] The Complaint also named the water authority and an individual residing at 421 North Butler Terrace as defendants. However, neither of these defendants are still a part of this action.

the easement "is located on Keegan's land[;]"[6] (2) the easement was not described or incorporated in the deed Lagana received from the Matontes;[7] (3) Lagana is not an heir of the Matontes and was not an assign of the easement;[8] (4) because "Lagana held no rights to the [e]asement," its actions in paving Gabriel Street and granting a sub-easement to the water authority were "improper[;]"[9] however, (5) because Keegan failed to produce a survey establishing how much, if any, Lagana encroached onto Keegan's property beyond the easement, it could not determine damages.[10] Consequently, the court entered the following order:

> AND NOW, this 26th day of April, 2018, it is hereby ORDERED and DECREED as follows:
>
> > 1. The Court hereby ENJOINS any future obstruction by the Lagana Defendants of Keegan's use of the Easement over the Keegan Parcel without Keegan's express consent.
> >
> > 2. A hearing to determine the valuation of damages in this matter is hereby scheduled to occur [] August 1, 2018 at 9:00 a.m. …

Order, 4/26/2018.

---

[6] Trial Court Opinion, 4/27/2018, at 9-10.

[7] *See id.* at 11.

[8] *See id.* at 11-12.

[9] *Id.* at 12.

[10] *See id.* at 13.

- 5 -

Lagana filed a motion for clarification and/or reconsideration on May 3, 2018, and a supplemental thereto on May 8, 2018. However, before the trial court ruled on his motion, Lagana filed a notice of appeal on May 25, 2018.[11] The court later denied the motion on May 29, 2018.

Before we may address the substantive issues on appeal, we must first consider whether the order before us is appealable. "Although no party has challenged our jurisdiction on such grounds, we may always review our jurisdiction *sua sponte*." **See Barak v. Karolizki**, 196 A.3d 208, 215 (Pa. Super. 2018).

Generally, an appeal lies only from a final order. **See id.** **See also** Pa.R.A.P. 341(b)(1) (a final order "disposes of all claims and of all parties"). The order at issue is not final because it scheduled a valuation of damages hearing for a future date. Nevertheless, we find the court's April 26, 2018, order is appealable pursuant to Pa.R.A.P 311. Rule 311 allows a party to appeal certain otherwise interlocutory orders as of right, including orders involving injunctions. **See** Pa.R.A.P. 311(a)(4). Specifically, the rule provides:

> (4) Injunctions.--An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered:

---

[11] On June 21, 2018, the trial court ordered Lagana to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Lagana complied with the court's directive, and filed a concise statement on July 12, 2018.

\* \* \* \*

> (ii) After a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

Pa.R.A.P. 311(a)(4)(ii). Because we conclude the court's April 26, 2018, order "enjoin[ed] conduct previously permitted" as set forth in Rule 311(a)(4)(ii), it was immediately appealable as of right. Accordingly, we proceed to review the issues raised by Lagana on appeal.

Preliminarily, we note that when considering a decision by a trial court sitting without a jury our scope of review is

> limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

> Since this is an action in ejectment, plaintiffs carried the burden of establishing [their case] by a preponderance of the evidence....

*Croyle v. Dellape*, 832 A.2d 466, 470–471 (Pa. Super. 2003) (citations omitted). Furthermore, we note that:

> In construing a deed or a contract, certain general principles must be kept in mind. First, it is the intention of the parties at the time of entering in thereto that governs, and such intention is to be gathered from a reading of the entire contract. In addition, "'Contracts must receive a reasonable interpretation, according to

- 7 -

the intention of the parties at the time of executing them, if that intention can be ascertained from their language....'"

**Southall v. Humbert**, 685 A.2d 574, 577 (Pa. Super. 1996) (quotation omitted).

In his first issue, Lagana argues the trial court erred when it determined the right-of-way Keegan granted to the Matontes was an easement in gross as opposed to an easement appurtenant. **See** Lagana's Brief at 11.

The Pennsylvania Supreme Court has described an easement in gross as follows:

> An easement in gross is defined as a mere personal interest in the real estate of another. The principal distinction between it and an easement appurtenant is found in the fact that in the first there is, and in the second there is not, a dominant tenement. The easement is in gross, and personal to the grantee, because it is not appurtenant to other premises. The great weight of the authorities supports the doctrine that easements in gross, properly so called because of their personal character, are not assignable or inheritable, nor can they be made so by any terms in the grant [].

**Lindenmuth v. Safe Harbor Water Power Corp.**, 163 A. 159, 160 (Pa. 1932). "An easement in gross is a mere personal interest in, or right to use, the land of another." **Loughran v. Matylewicz**, 81 A.2d 879, 881 (Pa. 1951). **See also** 7 Summ. Pa. Jur. 2d Property § 18:3 (2d ed. 2019) ("An 'easement in gross' is an easement with a servient estate but no dominant estate [and] is a mere personal interest in, or a right to use, the land or water of another.") (footnote omitted).

Conversely, a prerequisite to the creation of an easement appurtenant is the "[e]xistence of a servient tenement for the beneficial use of a dominant tenement[.]" *Brady v. Yodanza*, 425 A.2d 726, 727 (Pa. 1981).

> In determining whether a particular easement created by grant is or is not appurtenant to land, two matters must be considered— the nature of the right and the intention of the parties. In the first place, it is a rule that nothing can be appurtenant unless it agrees in nature and quality with the thing to which it is claimed to be appurtenant. … In addition, the easement must bear some relation to the use of the dominant estate. A right not connected with the enjoyment or use of a parcel of land granted cannot be annexed as an incident to that land, so as to become appurtenant to it.

*Lindenmuth*, *supra*, 163 A. at 161. Moreover, "[m]any cases recognize that where an easement is annexed as an appurtenance to land … it passes with a transfer of land although not specifically mentioned in the instrument of transfer." *Brady*, *supra*, 425 A.2d at 728.

Here, the grant of right-of-way executed by Keegan in favor of the Matontes described a .303 acre parcel of Keegan's land (20 feet by 660 feet) that bordered the Matontes' property. The document stated that, in consideration for one dollar, Keegan

> does grant to DOMINICK MATONTE and ANN MATONTE, his wife, their heirs and assigns, the perpetual right-of-way and easement at any and all times hereafter to ingress, egress and regress over [a specific] parcel of land situate in Hazle and Butler Townships, including the right to make passable said right-of-way[.]

Grant of Right-Of-Way, 12/6/1976.

The trial court did not explicitly determine whether the easement was in gross or appurtenant to the property. However, our review of its opinion

- 9 -

reveals the court found the easement was intended only for the benefit of the Matontes, and did not pass with the land; in other words, the right-of-way at issue was an easement in gross. Indeed, the court determined "Keegan granted the Matontes, their heirs and assigns, rights of ingress, egress and regress over the [e]asement." Trial Court Opinion, 4/27/2018, at 10. However, it found the easement was not described in the deed transferring the land to Lagana, nor did the Matontes specifically convey an assignment of the easement to him. *See id.* at 11-12. Furthermore, it is undisputed Lagana is not an heir of the Matontes. *See id.* at 12. Based upon these findings, the court concluded the easement was personal to the Matontes (in gross), and did not pass with the land when it was sold to Lagana (appurtenant). We agree with Lagana that this conclusion was in error.

Here, the easement was adjacent to a dominant (Matonte) and servient (Keegan) estate. Although the agreement named the Matontes, their heirs and assigns, as the grantees, it provided for "the **perpetual** right-of-way and easement at **any and all times hereafter** to ingress, egress and regress" over a defined parcel of land. Grant of Right-of-Way, 12/6/1976 (emphasis supplied). The description of the easement specifically referenced that it ran "along the lands of Dominic Matonte[.]" *Id.* There is nothing in the language of the right-of-way that indicates it was intended to be for the sole personal use of the Matontes, and not attached to the land.

We note, however, John Keegan did testify the "right-of-way" was not granted out of necessity, because the Matontes had access to their property

on the west side of their parcel.  *See* N.T., 10/25/2017, at 17.  Rather, he claimed "[i]t was just meant to be a right-of-way of convenience" so the Matontes could "access their property" on the eastern side.  *Id.* at  20.  Regardless, the right-of-way, as granted, did not provide for the private or exclusive use of the Matontes.  Indeed, the language in the grant creating a "perpetual right-of-way and easement at any and all times hereafter" supports the assertion that the easement was created in perpetuity attached to the land.  Grant of Right-of-Way, 12/6/1976.

A comparison of the facts in the ***Miller v. Lutheran Conference & Camp Ass'n***, 200 A. 646 (Pa. 1938), which concerned an easement in gross, is instructive.  In that case, Frank Miller and his brother Rufus Miller owned lands on Tunkhannock Creek.  They, along with other landowners, created Pocono Spring Water Ice Company ("the corporation").  The corporation erected a dam on the Creek, which then formed Lake Naomi.  ***See id.*** at 647-648.  The organizers leased their land along the newly formed lake to the corporation for "exclusive use of the water and its privileges[,]" that is, for "pleasure, boating, skating, fishing and the cutting, storing and selling of ice." *Id.* at 648.  Thereafter, the corporation granted to Frank Miller, "his heirs and assigns forever, the exclusive right to fish and boat in all the waters of said corporation at Naomi." *Id.*  Frank Miller later granted to his brother, Rufus Miller, a one-fourth interest in the fishing, boating and bathing privileges.  He did this in conjunction with the creation of a business partnership, which the brothers used to operate and maintain bath and boat houses along the lake.

*See id.* After Rufus Miller's death, the partnership was terminated, and each of the brothers (or their heirs) granted licenses to others for the use of the lake. At issue was a license Rufus Miller's estate ("the estate") granted to Lutheran Conference and Camp Association, which owned land abutting the lake, to give its members permission to boat, bathe and fish in the lake. *See id.* Frank Miller and his wife, Katherine, sought an injunction to prevent the Association from trespassing, and in particular bathing, in the lake.

While the issues on appeal concerned whether the original easement included bathing rights and whether the rights granted in the easement were divisible,[12] for our purposes, we note the Court found the rights obtained by Frank Miller from the corporation were granted as an easement in gross. *See id.* at 650. The Court explained: "[T]hese rights, not having been granted in connection with, or to be attached to, the ownership of any land, were not easements appurtenant but in gross." *Id.* Indeed, Frank Miller obtained from the corporation the exclusive right to fish and boat in the lake. However, he did not obtain those rights because he had an abutting property; he obtained the rights to operate a boating and bathing business on the lake. Conversely, in the present case, the Matontes obtained a right-of-way from Keegan for the

---

[12] We note the Court ultimately held Frank Miller obtained bathing rights by prescription, and the easement in gross he obtained from the corporation was assignable. *See Miller*, *supra*, 200 A. at 650-651. However, the Court also held that while Frank Miller could assign part of his interest to Rufus Miller, neither had the authority to sub-license their rights: "[T]hey should be utilized in common and not by two owners severally, [as] this was evidently the intention of the brothers." *Id.*

sole purpose of eastern access to their property. Unlike in **Miller**, the easement herein was granted "in connection with" and "attached to" the Matontes' ownership of abutting land. **Miller**, **supra**, 200 A. at 650. Accordingly, we agree the trial court erred in determining the right-of-way constituted an easement in gross, personal only to the Matontes.

In his second issue, Lagana contends that because the right-of-way was an easement appurtenant, "it passed by operation of law to [him] as purchaser[] of the dominant estate." Lagana's Brief at 14. Again, we agree.

The trial court concluded "Lagana held no rights to the [e]asement" because he was not an heir or assign of the Matontes, and the easement was not incorporated in the deed conveyed by the Matontes to Lagana. Trial Court Opinion, 4/27/2018, at 10-12. However, that conclusion was dependent upon the court's finding that the right-of-way granted by Keegan was personal to the Matontes, *i.e.*, an easement in gross. We have found that determination to be incorrect. Moreover, as noted above, an easement appurtenant "passes with a transfer of land although not specifically mentioned in the instrument of transfer." **Brady**, **supra**, 425 A.d at 728. Accordingly, we conclude Lagana obtained the right to use the easement when he purchased the Matontes' property.

In his third issue, Lagana asserts the trial court erred in refusing to grant summary judgment or dismiss the action when Keegan failed to "describe the encroachment with the required degree of specificity." Lagana's Brief at 17. By way of background, Lagana filed a motion for summary judgment on

- 13 -

October 10, 2017, two weeks before trial. He asserted that Keegan's allegations of encroachment were based upon a purported 30-foot wide easement Lagana granted to the water authority, when the easement at issue was only 20 feet wide. *See* Lagana's Motion for Summary Judgment, 10/10/2017, at ¶ 10. Lagana insisted Keegan failed to provide an "adequate description" of the alleged 10-foot encroachment. *Id.* at ¶ 21. The trial court denied the motion without opinion on October 17, 2017.

We find no error or abuse of discretion on the part of the trial court. Indeed, summary judgment is appropriate only "when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Krepps v. Snyder*, 112 A.3d 1246, 1258 (Pa. Super. 2015) (quotation omitted), *appeal denied*, 125 A.3d 778 (Pa. 2015). Here, the pretrial record did not "clearly" show that Keegan could not establish the 10-foot encroachment during trial.

As for the second part of Lagana's claim, we also do not find Keegan's failure to establish the 10-foot encroachment constituted a basis for dismissal of its entire claim. We note the trial court did find "Keegan fail[ed] to produce a survey establishing precisely how much, if any, pavement encroaches onto the Keegan [p]arcel beyond the [e]asement's boundaries." Trial Court Opinion, 2/27/2018, at 13. Moreover, the court's opinion suggests that Keegan may present evidence of this encroachment at the future damages hearing. To the extent the court's decision allowed Keegan to have "another bite of the apple" to demonstrate the 10-foot encroachment by survey, we

- 14 -

find the court erred. Nonetheless, as will be discussed *infra*, the court may grant other relief.

Despite the fact we find several of the trial court's rulings to have been in error, we affirm the order on appeal. Lagana's right to make use of the easement was still subject to the terms of the easement itself. The easement provided the grantees with the right to "ingress, egress and regress" over the specified parcel of land, "including the right to make passable said right-of-way." Grant of Right-of-Way, 12/6/1976. Furthermore, it is well-settled that "the owner of land, who grants a right of way over it, conveys nothing but the right of passage, and reserves all incidents of ownership not granted." ***Dyba v. Borowitz***, 7 A.2d 500, 501 (Pa. Super. 1939). Accordingly, as much as Keegan could not interfere with Lagana's right-of-way, Lagana could not make use of the easement for any purposes not explicitly granted in the right-of-way.

As noted above, the 10-foot encroachment constituted only part of Keegan's claim. In its complaint, Keegan sought an order directing Lagana to, *inter alia*: (1) "remove the paved portion of the paved road along the common boundary of the two parcels;" (2) "remove landscaping and parking spaces on the right-of-way, currently obstructing the right of way;" and (3) "remove the encroachment of large rocks, fill and/or debris from Keegan's land." Complaint, 8/17/2006, at 9. To the extent these actions interfered with Keegan's use of the parcel, and/or exceeded the rights granted in the right-of-way, Keegan may be entitled to damages and/or equitable relief, such

as the removal of the obstructions. We leave this determination to the trial court upon remand.

Accordingly, we affirm the order on appeal, which, in essence, simply enforced the terms of the easement. Indeed, the order enjoined Lagana from any "future obstruction … of Keegan's use over the [e]asement … without Keegan's express consent." Order, 4/26/2018. Although the court concluded Lagana had no right to use the easement, it did not include that specific finding in its final order.[13] Because the court did not determine what damages, if any, Keegan was entitled to as a result of Lagana's obstruction of the right-of-way, we remand this case for a damages hearing.[14]

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

---

[13] Indeed, the order, as filed, did not enjoin Lagana from using the right-of-way.

[14] We note the trial court found Lagana's paving of the easement was improper because it had concluded Lagana did not have any rights in the easement. As noted above, we found that determination to be in error. Moreover, because the specific language in the easement included "the right to make **passable** said right-of-way," we find Lagana's paving of the easement, now known as Gabriel Street, to be permissible under the specific terms of the right-of-way. Grant of Right-of-Way, 12/6/1976 (emphasis supplied).

- 16 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>08/12/2019</u>