## Hilton *v.* Hilton, Appellant.

*Divorce—Adultery of wife—Evidence.*

A visit by a wife to the lodgings of a man at midnight, where she remained for over an hour, coupled with evidence that she had carried on an immoral conversation with him immediately before her visit, is sufficient evidence of adultery, even though the act of coition is denied, to establish her guilt and permit the granting of a divorce.

Argued Dec. 12, 1916.   Appeal, No. 223, Oct. T., 1916, by defendant, from decree of C. P. No. 3, Philadelphia Co., Sept. T., 1915, No. 61, awarding divorce in case of William L. Hilton v. Marguerite A. Hilton.   Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREX-LER and WILLIAMS, JJ.   Affirmed.

Libel for divorce.
The opinion of the Superior Court states the facts.

*Error assigned* was decree awarding divorce.

*Edgar W. Lank,* for appellant.

*John D. McMullin,* for appellee.

OPINION BY WILLIAMS, J., April 16, 1917:

This was an action for divorce a vinculo matrimonii on the ground of adultery.

The admitted facts are, viz: that respondent had met one Raymon Owens by appointment on the evening of

July 29, 1915; had danced with him on the Steel Pier until the hall was closed; they sat together upon a bench at the ocean end of the pier for some time; they then proceeded to Owen's apartment, which they entered about 11:40 p. m., and remained there until they were interrupted and arrested at 1:20 a. m.

One of the libellant's witnesses testified in addition that the respondent and Owens had carried on an immoral conversation while sitting on the pier, immediately prior to going to his apartment. Other testimony was adduced to indicate general loose and unrestrained conduct of the respondent with various men at times prior and subsequent to July 29, 1915.

The defense was a denial of any misconduct on the part of respondent and Owens. The respondent and her sister testified that she was in a physical condition on the 29th of July which made the act of coition abhorrent and impracticable. It was further testified that Owens desired to change his collar, which had wilted from the exertion of dancing, after which they intended going to a cafe to dance; that she accompanied him to his rooms to avoid insult from passing men; that after he had changed his collar she told him she felt ill and they sat down in separate chairs and talked, pending her partial recovery; and that she was about to depart when the constable arrested them. There was no testimony that either party, when arrested, showed any signs of having committed the offense, she being completely clothed, and Owens having only his coat off and vest unbuttoned. They had, however, been in a darkened apartment for about one hour and twenty minutes.

The master found "from admitted facts that the respondent did, as charged by the libellant, commit adultery with one Charles Raymon Owens" and recommended a decree in favor of the libellant. The court below dismissed exceptions to the master's report and entered the decree from which the present appeal has been taken.

The only question raised by the assignments of error is whether the decree of the court below was correct.

The entire record including 534 pages of typewritten testimony has been carefully read. We have the testimony of improper actions, and conversation of the respondent with Owens, with the undisputed fact that she did visit his lodgings at midnight and remained there with him long enough to have accomplished the purpose of such a visit. Such acts or circumstances raise a presumption of guilt and those who so act must expect to pay the penalty: Matchin v. Matchin, 6 Pa. 332.

We are of the opinion that the testimony in the case fully warrants the conclusion that the respondent did, as was charged in the libel and as was found by the court below, commit adultery with her chance companion, Owens. If, as her able counsel so eloquently argues, the result of an adverse judgment is "condemning the respondent to be a woman of no character and deprive her of the most sacred thing that is possessed by a woman— her chastity," she has no one to blame but herself. Her course of conduct was inconsistent with the thought of innocence.

The decree is affirmed.