Jones, Appellant *v.* Costlow et al.

Argued March 27, 1946. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Cecil P. Harvey,* with him *Evans & Evans* and *Walter Jones,* for appellant.

*Philip N. Shettig,* with him *Thomas A. Swope,* for appellees.

OPINION BY MR. JUSTICE JONES, May 27, 1946:

The plaintiff appeals from the final decree entered in his fourth suit against the same defendants for wrongs allegedly committed by them in respect of his status as a former stockholder of the defendant company. The learned chancellor held that the matters complained of, as disclosed by the pleadings, were res judicata by reason of the adjudication and decree in the plaintiff's last preceding suit which, on appeal to this Court, was affirmed: see 349 Pa. 136, 143, 36 A. 2d 460. The chancellor accordingly dismissed the bill and the plaintiff appeals from the consonant final decree entered by the court en banc.

As correctly stated in the opinion of the chancellor, the cause of action averred by the bill in the instant case was not involved in either of the plaintiff's first two suits (in one of which he was joined by his wife). Those suits will not, therefore, be further described or again referred to herein. As already indicated, the suit which is material to the present proceeding is the one wherein the decree was affirmed by this Court as cited supra. The facts necessary to an understanding of the questions here involved may be summarized as follows from the opinion on the former appeal.

The defendant Motor Sales Company of Johnstown was incorporated in 1919 under the laws of Pennsylvania. The three individual defendants were directors of the company and held, either in their own right or as testamentary fiduciaries, the majority of the company's 1350 shares of capital stock. The plaintiff owned 357 of such shares whereof he had pledged 188 shares with the First National Bank of Ebensburg as collateral security for personal loans and 160 shares with the United States National Bank of Johnstown for a similar purpose. The plaintiff went into bankruptcy in 1933, thereby losing title to the stock but obtaining his discharge from liability on his bank obligations. Through a straw man, he purchased from his trustee in bankruptcy for $50.00 the 348 pledged shares, subject to the liens of the banks, and some other securities. The plaintiff thereupon reassumed liability for his indebtedness owing the Ebensburg bank. At the suggestion or request of the national bank examiners, the Johnstown bank on August 22, 1934, and the Ebensburg bank on August 10, 1937, caused the hypothecated shares to be transferred to their respective names on the books of the defendant company. However, the banks continued to hold the stock as collateral for the plaintiff's loans, crediting to his account all dividends directly received by them following the transfers. On December 22, 1939, the Johnstown bank sold the 160 shares in its hands to defendant Lawrence B. Costlow and on July 24, 1940, the Ebensburg bank sold to the defendant company the 188 shares which it held. Costlow later assigned to the company the shares so acquired by him at the price he had paid therefor. The collateral notes on which the stock was sold by the banks were not put in evidence either in the former or in the present suit. It was assumed as a fact in the former case, and has not since been disputed, that the notes gave the pledgees the right, upon default thereunder, to sell the collateral without notice to the pledgor. The verity of that assumption is further confirmed by the fact that

the banks have never been impleaded by the plaintiff; nor has he otherwise charged them with any wrongdoing in selling the collateral.

In the former suit, "The prayer of [the] bill [was] that defendants be declared trustees ex maleficio for [plaintiff's] benefit of the shares sold by the banks, that these shares be declared to be his property and that their transfer to him be ordered by the court together with all dividends paid thereon since their acquisition by defendants; also that defendants pay to him his share of all excessive salaries drawn by them." See 349 Pa. at p. 138. In the opinion for this Court, there reported, Mr. Justice HORACE STERN, after noting (p. 138) that ". . . it is somewhat difficult to apprehend precisely the theory upon which plaintiff seeks relief", stated (pp. 139-140) that "Plaintiff's challenge of the validity of the transactions [defendants' purchase of the collateral] is apparently based, not upon any defect in the mechanics of the [banks'] sales, but upon the charge that the prices were inadequate and also that defendants, as directors of the corporation, had conspired to defraud him of his stock by withholding dividends thereon so that he would be unable to pay the interest on his loans and thus the banks would be forced to sell the stock and defendants could acquire it by purchase." Upon affirming the decree of the court below in the former case, this Court specifically approved the chancellor's findings that the prices paid the banks for the collateral stock were not inadequate, that the defendants were not guilty of the fraud charged by the plaintiff and that the salaries paid by the company to the defendant officers were not excessive.

The bill in the instant suit avers substantially the same facts as were contained in the bill in the former suit. In addition thereto, the present bill allows for reimbursement to Costlow or the company of the sums paid by them or either of them for the stock purchased from the banks, with interest thereon, less any dividends received by them on the stock since the date they ac-

quired it and further avers several conclusions of law on the basis whereof the appellant argues that the cause of action in the instant suit is not the same as that involved in the former suit. The relief prayed for by the present bill is that Costlow and the company be ordered to assign and transfer the stock to the plaintiff upon his reimbursement of them on the terms suggested in the bill and that the defendants be declared trustees of the stock for the benefit of the plaintiff.

The appellant contends that, in dismissing the bill on the grounds of res judicata, the court below erred for the reasons (1) that the defendants' motion, whereon the court below so acted, amounts to a speaking demurrer and is, therefore, incompetent to raise the question of res judicata and (2) that the cause of action sued upon in the instant case is different from that involved in the former suit wherefore the prior adjudication and decree could not in any view be res judicata as to the matters now in litigation. We shall consider these contentions in the order stated.

Res judicata, resting as it does on a prior judgment or decree said to adjudicate a pending controversy, primarily involves matters of fact which must be established of record, as are other facts, before the defense may be appropriately raised. See Moschzisker's Essays (Res Judicata), p. 81. Accordingly, it has been held that a defense of res judicata may not be interposed by preliminary objections to a bill in equity which makes no mention of the allegedly controlling prior judgment or decree: *Naffah v. City Deposit Bank*, 339 Pa. 157, 160, 13 A. 2d 63. The same is equally true with respect to an affidavit of defense raising questions of law to a statement of claim similarly silent as to any pertinent prior judgment or decree: *Steel v. Levy*, 282 Pa. 338, 341, 127 A. 766. Where, however, the prior proceeding is made a part of or referred to in a bill of complaint or a statement of claim, its effect as res judicata may be brought before the court and determined upon preliminary ob-

jections or an affidavit of defense raising questions of law. See, e. g., *Shotkin v. Presbyterian Church Board of Pensions,* 343 Pa. 650, 652, 23 A. 2d 419; *Miners Savings Bank of Pittston v. Walsh,* 148 Pa. Superior Ct. 389, 393, 25 A. 2d 771. It is fundamental, therefore, that the facts essential to a plea of res judicata must appear of record before the question can properly be raised. But, whether the required factual situation is brought about by pleadings efficient for the purpose or by proofs at trial is of no special consequence. We recently said in *Schlichtman v. Crawford,* 337 Pa. 497, 499, 12 A. 2d 52,—"It is well settled that the defense of res judicata may be raised by demurrer *where on the face of the record the plaintiff admits* the existence of the judgment or matter depended upon as showing a prior adjudication of the issues involved in the pending controversy: [citing cases]." (Emphasis supplied).

Although the plaintiff carefully avoided any reference in his bill in the instant case to the former adjudication and decree, the facts with respect thereto were later made to appear of record through further permissible pleadings. The defendants by their answer set forth *in extenso,* under the heading "New Matter", the prior adjudication and decree. Equity Rule 52 specifically allows for a defendant's so introducing "such additional facts, having a direct relation to any of the causes of action set forth in the bill, as [the defendant] believes will entitle him to affirmative relief against plaintiff. . . ." The plaintiff in his reply, which was required to be as precise as an answer lest the "New Matter" averred by the defendants "be taken as admitted" (Equity Rule 54), did not dispute the defendants' allegations as to the prior proceeding but contented himself with a denial of their legal force as res judicata. Plainly enough, the facts essential to the defendants' plea were thus admitted by the plaintiff on the face of the record upon which the court below acted. In that situation, it would indeed be anomalous to hold

that the facts, so admitted, could not be availed of as res judicata prior to a trial of the case on its merits merely because the plaintiff had chosen not to mention or refer to them in his bill. Such a ruling would be to prefer "the gratification of a litigious disposition on the part of suitors, to the preservation of the public tranquility and happiness" and would go a long way in impeding the beneficent effects to be derived from a prompt determination of res judicata where present: *Marsh v. Pier*, 4 Rawle 272, 289. Fortunately, the law requires no such result. The defense of res judicata "can be raised by *any* pleading whose office it is to put facts at issue, and questions thus raised will be dealt with and determined in the same manner as other issues in the case" (Emphasis supplied) : Moschzisker's Essays, loc. cit. supra. And, the Equity Rules afforded the defendants the opportunity to place upon the record, by their pleadings, the facts essential to res judicata which the plaintiff had studiously refrained from showing.

In fact, preliminary objections under Equity Rule 48 (7) have been held competent to raise the defense of res judicata where the plaintiff, confronted with a plea of res judicata, asserts no more than his own legal conclusion (as does the plaintiff in the instant case) that a difference exists between the matters determined by a prior proceeding and the issues sought to be raised in the pending controversy: see *Long v. Metzger*, 301 Pa. 449, 455, 152 A. 572; and *Kowatch v. Home Building and Loan Association of Latrobe*, 131 Pa. Superior Ct. 517, 519, 200 A. 111. However, that question is not presented by the record now before us. The matter for present review is the procedure actually followed below in this case which we approve as having properly brought upon the record the facts essential to the defendants' plea. The same procedure was adopted and followed by the Court of Common Plea of Dauphin County in *Hershey v. The Brotherhood's Relief and Compensation Fund*, 34 Dauphin County Reports 13, 20 (1930), where

that court aptly said,—"We think it would be useless to overrule defendants' motion and direct that this case proceed to a hearing. The defendants would read into the record the facts which we found to be admitted in plaintiffs' replication to the new matter in defendants' answer. We do not think the case could proceed any further as these admitted facts undoubtedly would preclude the offering of testimony to establish the allegations in the plaintiffs' bill."

Holding as we do that the defense of res judicata was appropriately before the court below in the instant case, there can be no doubt that the matters decided by the former suit are res judicata of the issues which the plaintiff seeks by the pending bill to re-litigate. Of the four identities requisite to a plea of res judicata,[1] the appellant does not deny, nor is it open to dispute, that the thing sued for, the persons or parties to the action and the quality in the persons for or against whom the claim is made are precisely the same in both suits. The only difference which the appellant asserts is that the cause of action sued upon in the instant case is not the same as that involved in the former proceeding. The difference, as he contends, is that the cause of action in the former suit was *actual* fraud while in the present it is *constructive* fraud. But that does not give rise to disparate causes of action. The facts of the two cases being the same, constructive fraud could have as well been asserted in the former suit as in the present. "The failure of a complainant to sustain the positive averment of actual fraud, will not entitle the defendant to the dismissal of the bill, when there is proof of constructive fraud": *Schmid v. Lancaster Avenue Theatre Company,*

---

[1] The four identities which must be present to support a defense of res judicata are (1) the thing sued for, (2) the cause of action, (3) the persons and parties to the action and (4) the quality in the persons for or against whom the claim is made: see *Bennett, Trustee, v. Erwin,* 325 Pa. 330, 333, 189 A. 675, quoting with approval from *Siegfried v. Boyd,* 237 Pa. 55, 59, 85 A. 72.

244 Pa. 373, 379, 91 A. 363. That is so, not because the two different kinds of fraud respectively confer different causes of action, but because fraud, regardless of its incidence, is the cause of action; and, where the facts are insufficient to prove a charge of actual fraud, they may be capable of proving constructive fraud. But, "Trusteeship [is] the gist of both proceedings": *Wallace's Estate,* 316 Pa. 148, 152, 174 A. 397.

The prior adjudication and decree are just as conclusive of the question of constructive fraud in the instant case as they were of actual fraud in the former. *". . . res judicata* may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, 'but also as respects any other available matter which might have been presented to that end.' ": *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 378, quoted with approval in *Federal Land Bank of Baltimore v. Putnam,* 350 Pa. 533, 538, 39 A. 2d 586. In *Wallace's Estate,* cit. supra, which involved the third attempt by the same plaintiffs (sisters) to secure a division of shares of stock, standing in their deceased brother's name, on the theory that the brother had held the stock either as a resulting, constructive or parol trustee for the benefit of his sisters and himself, it was held that "The fact that new or different evidence was or may be offered in each of the suits to sustain the particular theory relied on is of no moment (Rauwolf v. Glass, 184 Pa. 237), for the basic issue in all of the cases was: Did Frank Wallace [the record owner] hold this stock or any of it in trust for his sisters and himself?" The same is equally true here. The issue involved in the former and the pending proceeding was: Did the defendants hold the stock in controversy in trust for the plaintiff? As was further stated in *Wallace's Estate,* all grounds available to establish the alleged trust relationship were or should have been pleaded and litigated in the first proceeding and that it therefore became res judicata as

to the asserted trust. It was also observed in *Wallace's Estate* that "This case is well illustrative of the need and purpose of the doctrine of res judicata." A like observation may well be made with respect to the matter now before us.

On the merits of the appellant's present contention, the charge of constructive fraud which he now advances as a different cause of action rests upon the theory that, the plaintiff being the equitable owner of the pledged shares at the time the banks sold them, the individual defendants as directors of the company breached their fiduciary duty to the plaintiff stockholder by having the company extinguish his interest therein through the purchase of his stock with corporate funds in which the pledging stockholder had an equitable interest. The difficulty with that contention is that it assumes a fact contrary to our former adjudication where it was said (p. 139) that,—"In any event defendants acquired an unimpeachable title to the stock because they were not informed as to any limitation on the banks' authority to sell it: [citing cases]. There is no evidence in the record to establish that defendants, beyond knowing that the stock had originally been pledged by plaintiff with the banks, that he was in financial distress, and that his notes had been in default, had reason to believe otherwise than that the banks, which then held the stock in their own names, were the full and absolute owners thereof." And so, the very contention which the appellant now makes in that connection was answered adversely to him by our former decision.

Nor does the fact that the plaintiff's present bill tenders the defendants reimbursement for what they paid the banks for the stock add any new equity to the case. It is true that in our former decision it was pointed out that the plaintiff was not entitled to the equitable relief which he sought when he had neither tendered nor offered "to repay to defendants the money they expended for the stock" nor even alleged "that he is ready and

willing to reimburse them". That observation was purely parenthetical and not material to the decision, as is plainly implied by our prompt refusal of the appellant's petition for a reargument of the former appeal wherein he had assigned as a reason for the granting of a reargument his willingness to reimburse the defendants for the cost of the stock and his prior impression that a decree in his favor would have so required in any event.

The decree of the court below is affirmed at the appellant's costs.