Connor *v.* Connor, Appellant.

Argued October 3, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Roy Pressman,* for appellant.

*Francis D. Pastorius, 5th,* with him *Howard C. Cummings, Wendell B. Stewart* and *George T. Jackson,* for appellee.

*Irving R. Shull,* with him *Alfred I. Ginsburg* and *Bernard L. Lemisch,* for intervening appellee.

OPINION BY GUNTHER, J., January 12, 1951:

Lillian Connor, appellee, instituted this action in divorce charging her husband with (1) indignities to the person; (2) cruel and barbarous treatment; and (3) adultery. The master appointed by the court below recommended that a divorce be granted on the ground of adultery, and that the complaint be dismissed as to the remaining charges. The court below adopted the recommendations of the master and entered a decree of divorce. Defendant now appeals and urges that the decree should be reversed because (1) the testimony supporting the charge of adultery comes from witnesses whose testimony is tainted by self-interest and fraud; that the court below erred in giving credence to said

testimony; and (2) that the plaintiff has not met the burden of proving the charge alleged by clear and convincing testimony.

The parties were married in 1935, and shortly thereafter moved to Philadelphia where they lived until they separated in January, 1947. The evidence adduced by the plaintiff and her witnesses indicated that adultery was committed in April and May, 1947. Plaintiff testified that she saw the defendant and co-respondent together at various public places; that she saw the co-respondent housecleaning rooms in the defendant's home. Plaintiff testified that in July, 1947, she went to her former home at 1253 North 13th Street, Philadelphia, where the parties had lived together, and that she there spoke to the co-respondent, Maude Allen Lee, who informed her that she was now Mrs. Connor. Defendant attempted to prove that plaintiff inaccurately identified the person representing herself as the new Mrs. Connor. The master concluded, however, that plaintiff's identification of the paramour was credible.

Strenuous complaint is made by appellant concerning the credibility of the two following witnesses who testified on behalf of plaintiff. A careful examination of their testimony discloses that there is no merit to appellant's complaint that the testimony of these two witnesses is tainted by "self-interest and palpable fraud." These two witnesses are Maggie Lee Burgess and her husband, Fleet Burgess. Maggie Lee Burgess and her husband were tenants of the defendant and occupied living quarters on the second floor front of his home. Maggie Burgess testified positively of her own knowledge that Maude Lee came to live at the Connor home in the early part of 1947, shortly after the parties had separated, and that the defendant and Mrs. Lee shared the second floor rear bedroom during the early part of 1947. She testified that on or about April 1,

at about 8:00 in the morning, a man whom she described as a bill collector rang the doorbell. She answered and the man asked for Mr. Connor, the defendant, whereupon the witness and caller proceeded up the stairway to the bedroom at the rear of the second floor. Mrs. Burgess testified that the co-respondent appeared at the door of this room clad in a nightgown; that Mrs. Burgess asked Maude Lee where Mr. Connor was, that a man wished to see him, whereupon Maude Lee turned from the door and addressed the defendant who was in bed. Fleet Burgess testified that Mrs. Lee moved into defendant's home shortly after the parties had separated in January, 1947; that he saw Mrs. Lee cleaning parts of the house during January, 1947, and that on one occasion when he returned to the room on the second floor rear to pay his rent both defendant and Mrs. Lee were in the bedroom, the latter being clothed in a housecoat. The Burgesses both testified that they moved from the premises on May 17, 1947. There was an effort on the part of appellant to discredit the testimony of the Burgesses, by attempting to prove that on or about April 1, 1947, the Burgesses no longer were living as tenants in defendant's home. To prove this fact, a handwriting expert was called by defendant to prove, as a forgery, a certain rent receipt introduced by plaintiff, and claimed to have been signed by defendant, showing that the Burgesses had paid rent up to and including May 17, 1947. Defendant testified that he did not sign the receipt; that it was a forgery. The testimony of defendant in regard to this rent receipt is most unimpressive. Defendant denied that it was his signature on the questioned rent receipt, but later, after his handwriting expert had testified, admitted the signature was genuine. A scrutiny of the handwriting expert's testimony will show that even though he was called by the defendant, he becomes in fact one of the strongest of plaintiff's corroborating witnesses for his

testimony clearly established that the signature on the pivotal rent receipt was that of the defendant himself. Appellant's charge of "self-interest and fraud" in the testimony of the Burgesses is based upon testimony of Fleet Burgess that he was unemployed at the time of the hearing and he and his wife were each paid $10.00 as witness fees; that Fleet never discussed the case with his wife; that defendant ordered him to vacate their apartment, and that defendant threatened to go to the Rent Commission. We are unimpressed with appellant's argument that the testimony of the Burgesses is incredible and fraudulent. Both witnesses were subjected to intense cross-examination by counsel for defendant and the co-respondent and their testimony remained, in a final appraisal, undisturbed. The factors to which appellant points, when read in their context, indicate merely the confusion of uneducated witnesses under intense cross-examination, rather than guileful attempts to fabricate. It is of significance also to note the observations of the master who saw and heard the parties when they testified. He said: "From a credibility standpoint, the Master believes the testimony of Maggie Lee and Fleet Burgess, and places considerable reliance on it. The Master finds that they were truthful witnesses, and accurately described the situation in the Connor home between January and May, 1947". It is true, of course, that a master's recommendation is advisory only, but where, as here, the crux of a bitterly contested case is the credibility of witnesses, we accord to the master's findings thereon full consideration. *Graf v. Graf,* 168 Pa. Superior Ct. 66, 168 A. 2d 66; *Fullwood v. Fullwood,* 156 Pa. Superior Ct. 409, 411, 40 A. 2d 876. He has had an opportunity, not accorded us, to observe the demeanor and appearance of witnesses which in many instances become "the very touchstone of credibility": *Smith v. Smith,* 157 Pa. Superior Ct. 582, 584, 43 A. 2d 371.

Plaintiff called a Mrs. Kathleen Elam who testified that she lives across the street from the defendant's residence; that from her home she can see every room in the defendant's house with two exceptions; that she has seen defendant and Mrs. Lee together in the second story rear bedroom of defendant's home; that on various occasions she had seen the defendant and Mrs. Lee retire to the room in question and prepare themselves for bed. Mrs. Tate, mother of the plaintiff, testified that she saw Mrs. Lee in defendant's home sometime in March of 1947, and that thereafter she saw both defendant and Mrs. Lee together on the second floor rear bedroom. This witness candidly admitted that she was spying on the defendant and Mrs. Lee because she had heard considerable gossip concerning Mr. Connor's domestic situation. She further testified that she had seen defendant and Mrs. Lee in public places without number; that during May, 1947, she saw both parties in the second floor rear bedroom a number of times. Evaluating this testimony of plaintiff's relatives with prejudice in mind, the master said: "The testimony of Mrs. Elam and Mrs. Tate alone would be sufficient to sustain a finding in plaintiff's favor, were it not for the fact that both of these women virtually admitted that they were spying on defendant. . . . It might even be conceded that under these facts, such witnesses are not altogether without prejudice. This, however, would not prevent a fact finder from substantially crediting their testimony, particularly since it is corroborative of the testimony of plaintiff and other witnesses whom the Master believes".

Mrs. Lee testified on her own behalf and denied categorically any improper conduct with defendant; that she did not commence to live in the Connor home until July 3, 1947, but admitted that she accompanied defendant to the cinema and went riding with him in his automobile on occasion. Credence in her testimony

is substantially weakened by plaintiff's exhibit showing that Mrs. Lee, on August 9, 1948, registered as a voter and in which affidavit she represented that she resided at 1253 North 13th Street, the Connor home, for a period of one and one-half years prior to August 9, 1948. Subtracting eighteen months from August 9, 1948, one arrives at the date February 9, 1947. Such exhibit strongly corroborates the testimony of the Burgesses that the co-respondent went to live in the Connor home shortly after the parties separated. Mrs. Lee's protestations that the period of one and one-half years was a mistake is most unimpressive. A reading of the testimony discloses that she appeared to be an impudent and intractable witness; her attitude is not one generally associated with innocence.

The charge of adultery is a serious one, and the proofs must be clear and satisfactory, established by "clear proofs of imperious reasons", and "must be of such a clear and convincing character as to leave no other conclusion in the mind of a reasonable person"; *Diehl v. Diehl*, 87 Pa. Superior Ct. 545, 550; *Viale v. Viale*, 109 Pa. Superior Ct. 560, 562, 563, 167 A. 437. It is not necessary to prove the direct fact of adultery; for, being committed in secret, it is seldom susceptible of proof except by circumstances which, however, are sufficient whenever they would lead the guarded discretion of a reasonable and just man to a conclusion of guilt: *Matchin v. Matchin*, 6 Pa. 332, 338; *Ammann v. Ammann*, 90 Pa. Superior Ct. 25, 28; *Cook v. Cook*, 85 Pa. Superior Ct. 403; *Hilton v. Hilton*, 66 Pa. Superior Ct. 378; *Pierpoint v. Pierpoint*, 108 Pa. Superior Ct. 108, 110, 164 A. 808.

We have painstakingly read the voluminous record, conscious of the serious responsibilities that devolve upon us, and we can come to no other conclusion than that the testimony of plaintiff and her witnesses is clear and satisfactory and sufficient to establish in the

mind of any fair, unbiased and open-minded person that defendant was guilty of the charge alleged.

One final complaint raised by appellant may be disposed of briefly. Plaintiff filed an action in divorce on October 11, 1946, charging indignities and cruel and barbarous treatment. That matter was litigated and her libel dismissed by the court below on September 29, 1947. The instant divorce proceeding was commenced on August 13, 1948, which was sometime after the final decree in the first action. Appellant's complaint is that a determination of the first action adversely to plaintiff is *res adjudicata* of the present action. Adultery was not charged in the first action for the simple reason that it had not yet occurred. The principle of *res adjudicata* has no application because the instant appeal rests only on the sufficiency of the evidence to support a decree on the charge of adultery. Refusal of a decree of divorce on one ground is not a bar to procuring it in another action on a different ground: *Commonwealth ex rel. Esenwein v. Esenwein,* 153 Pa. Superior Ct. 69, 75, 33 A. 2d 675; *Restatement, Judgments,* Section 74, comment d; *Freedman, Law of Marriage and Divorce,* page 1409.

Decree affirmed.