Larsen, Appellant, *v.* Larsen.

Argued March 21, 1957. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P.J., absent).

*Carl A. Belin,* for appellant.

*Robert V. Maine,* for appellee.

OPINION BY GUNTHER, J.: June 11, 1957:

This is an appeal from a refusal of a divorce by the lower court where the master recommended that it be granted.

The parties were married on January 18, 1947. It was the first marriage for the plaintiff. Defendant had previously been married and lived with her first husband for a period of five years when that marriage was terminated by the death of the husband in military

service. Two children were born to the first marriage. About two years after the death of the first husband, defendant married Dr. E. Noer Larsen and moved into his home with her two children where they lived until the separation on October 15, 1947 and have not lived together since that date.

On November 5, 1947, the Court of Clearfield County made an order requiring Dr. Larsen to pay his wife $250.00 per month for support which order remains in force to this day.

On April 19, 1948, the plaintiff commenced his first action in divorce on the grounds of indignities. On August 9, 1948 plaintiff filed an amended bill of particulars alleging desertion by the defendant.

In that first action the master filed a report recommending that the divorce be refused; and on October 3, 1949, the court entered an order accepting the master's recommendation. No appeal was taken from the order of the lower court.

A second divorce action alleging desertion commenced by plaintiff on January 10, 1955. The defendant filed an answer denying the allegation and affirmatively asserted the defense of res adjudicata.

On March 28, 1955, the case was placed upon the argument list to determine the plea of res adjudicata.

On May 11, 1955, the motion to dismiss on the ground of res adjudicata was overruled and on May 17, 1955, a master was appointed who heard the testimony and filed his report recommending that a divorce be granted. Exceptions to the report were filed and all were sustained except the one relating to the question of res adjudicata. The divorce was refused.

Two main questions are raised in this appeal. The more important one is whether the defendant left the home of the plaintiff on October 15, 1947 without his consent and without reasonable cause.

The plaintiff, Dr. Larsen, testified that defendant left home on October 15, 1947; that he never gave her any cause for leaving; that he had always provided a good home and that he knew of no conduct on his part which compelled her to leave.

The master, at this stage of the case, after taking into consideration the undenied facts in plaintiff's Bill of Complaint, ruled that the burden shifted to defendant to produce proof that her leaving was either for reasonable cause or by mutual consent. The ruling was based on the principle that where there has been a separation for the required statutory period, the burden is on the defendant to prove consent or a reasonable cause for her withdrawal from the matrimonial domicile. *Duncan v. Duncan,* 171 Pa. Superior Ct. 69, 90 A. 2d 357.

Defendant called three witnesses to establish that her withdrawal was because of indignities and that the separation was by mutual consent.

According to her version of the case, their difficulties began a few days after their marriage and were entirely because of the unreasonableness of the plaintiff. He, however, contends that the difficulties began when she tried to remodel his personality and change his way of life. Dr. Larsen, at the time of the marriage, was forty-seven years of age, and until that time had never been married. Mary Larsen was thirty-one years of age, a widow with two children ages five and three.

The defendant's chief complaints were that the plaintiff wanted a regulated life; that he wanted his meals on time; that he wanted to be in the office on time and that his patients always came first before her personal wishes. She testified that plaintiff's office hours were normally over at nine o'clock and that one week after their marriage when she was looking forward to having him come home he went visiting with

his friends the McCrackens and did not come home until ten or ten-thirty. She next testified that in March they had company at their home; that after the guests had left, plaintiff complimented her on her managing of the affair but that on the following night after office hours he again went out to visit the McCrackens and did not return until eleven-thirty. On this occasion, she was so upset that she left his bed and moved into the guest room.

After reviewing the record, we conclude that Dr. Larsen was not guilty of any course of conduct approximating indignities to the person. She admits that he never abused her; that he never embarrassed or humiliated her in the presence of other people; that he never cursed at her; that he was a good provider, giving her $100.00 per month for her personal use in addition to providing all the necessities of life and that he was always very considerate with her children. There is no doubt that plaintiff is set in his ways and she was having unusual difficulties in trying to change him. He preferred the quiet life while she was interested in social activities and entertainment. We also note from the record that during the first divorce case, on August 19, 1948, defendant, upon examination, testified as follows: "Q. Will you fix the time when you and the Doctor first started to have serious trouble between you. Was that July 29th? A. I have continued, each time, Mr. Pentz, to tell you that as far as I, personally, was concerned the problems were petty and trivial and amounted to less than nothing." On the question of consent there is testimony that on August 27, 1947, there was a meeting between Dr. Larsen, Mrs. Larsen, Ross Pentz and Ross Ferraro. Mrs. Larsen testified that at that meeting plaintiff made no effort at a reconciliation, but insisted on either a divorce or separation. This meeting was apparently called for the purpose of discussing the marital difficulties.

The plaintiff and Ross Ferraro testified that at this conference, defendant laid down three conditions to any reconciliation, namely:

(1) That the Doctor change his personality and consult a psychiatrist;

(2) That he abandon certain friends of which she did not approve, and;

(3) That she take over the financial aspects of his business.

The testimony of Dr. Larsen, as corroborated by Ross Ferraro, was that the Doctor refused a reconciliation based upon these conditions which he deemed unreasonable. The master resolved the credibility against the defendant and found that the meeting of August 27 was a bona fide effort to reconcile the marital difference. A reading of the record substantiates this finding. The defendant, Mary Larsen, having laid down unreasonable conditions as a prerequisite to a reconciliation, plaintiff's refusal did not constitute consent to her withdrawal from the marital home. She continued to live in the home for approximately six weeks after the conference of August 27, prepared his meals and took care of his clothes. Her own testimony shows that she left on the advice of her physician, Doctor Klein, who testified that he advised her to leave because of her nervousness. Dr. Larsen made every effort to reconcile their differences prior to her unreasonable demands on August 27, 1947. She made no offer to return and the plaintiff herein had a good and valid cause of action for divorce on the grounds of desertion. We have considered the support order in this case. The order itself did not preclude the plaintiff from securing a divorce on the grounds of desertion.

It is our opinion that the action was based on legal grounds and that the defendant did not show any reasonable cause for absenting herself from the home of

her husband. She remained away from him upwards of seven years and at no time made any offer to return.

The libellant was under no duty to accept her unreasonable demands. *Doemling v. Doemling,* 118 Pa. Superior Ct. 426, 430, 179 A. 813.

Mary Larsen said that most of the remarks upon which she bases her defense of consent took place at the August 27 conference. The law of consent is fully reviewed in *Hochberg v. Hochberg,* 166 Pa. Superior Ct. 306, 70 A. 2d 864 where the Court points out that consent depends upon some affirmative participation by the husband in the separation. The testimony shows that Doctor Larsen wanted a reconciliation and it was the wife who laid down the unreasonable demands. She testified she never informed her husband of her decision and no word was spoken on October 15 when she left.

In *Mertz v. Mertz,* 119 Pa. Superior Ct. 538, 180 A. 708, the Court decided: "Mere silent acquiescence, however, is not sufficient to establish consent; there must be shown some affirmative conduct amounting to participation, some evidence of a present mutual intention of the parties to separate and live apart."

Dr. Larsen showed clearly that he would have accepted his wife back if she had made a bona fide effort at reconciliation. The record shows that he got Ross Ferraro, the minister, Lila, his sister, and Ross Pentz, Esq., to attempt to effect a reconciliation with his wife.

The principle of res adjudicata does not apply in this case. Matters relating to the withdrawal from the home are the controlling facts in a case based on indignities. *Way v. Way,* 93 Pa. Superior Ct. 305. In *Reiter v. Reiter,* 159 Pa. Superior Ct. 344, 48 A. 2d 66, the Court pointed out that the first case was based on indignities and was not a bar to the second case, based upon desertion.

The appellee charges bad faith on the part of plaintiff in the delay to file the second divorce action. She points to the lapse of approximately seven years from the time of the refusal of the first divorce within which no action was taken to obtain a divorce. The doctor said he brought the second action as soon as his present counsel advised him that the first case was not res adjudicata of a second action. *Zeiler v. Zeiler*, 58 Pa. Superior Ct. 220. In *Hochberg v. Hochberg*, 166 Pa. Superior Ct. 306, 70 A. 2d 864, the husband delayed his action for divorce on the grounds of desertion for twelve years and he was not held to be acting in bad faith.

Decree is reversed and the record is remanded to the court below for the entry of a decree of divorce.