Larsen *v.* Larsen, Appellant.

Argued January 8, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

reargument refused May 27, 1958.

610

*Robert V. Maine,* with him *Clarence K. Gundaker,* for appellant.

*Carl A. Belin,* for appellee.

OPINION BY MR. JUSTICE COHEN, May 2, 1958:

Plaintiff, E. Noer Larsen, married the defendant on January 18, 1947. Within nine months the parties separated and thereafter have not lived together.

On April 19, 1948, plaintiff instituted an action for divorce against the defendant on the ground of indignities. In that proceeding the master, who saw the witnesses and heard the testimony, found that the plaintiff failed to establish a course of conduct by his wife amounting to indignities to his person and that he was the innocent and injured spouse. The report of the master was accepted by the trial court and, after a hearing on exceptions thereto, the divorce was refused. No appeal was taken.

On January 10, 1955, plaintiff instituted a second action for divorce, this time on the ground of desertion. The alleged withdrawal by Mrs. Larsen from the plaintiff's home occurred prior to the date of the first proceeding. Again, testimony was heard by a master who recommended that a divorce be granted. Defendant filed exceptions which were sustained by the lower

court, and the divorce was refused. Plaintiff then took an appeal to the Superior Court which reversed, and remanded the record for the entry of a decree of divorce. See 184 Pa. Superior Ct. 221, 132 A. 2d 883 (1957).

The defendant thereupon petitioned this Court to review the judgment of the Superior Court and we granted allocatur.

On this appeal we limit ourselves to consideration of whether the adjudication of the factual issues involved in the first divorce action in 1947 under the doctrine of collateral estoppel controls the disposition of the present case.[1]

When a judgment on the merits is rendered in favor of a defendant, the plaintiff is prevented by the principle of res judicata from subsequently bringing suit on the same cause of action although he presents a ground for the relief asked additional to those stated in the original action. Restatement, Judgments, §63 (1942) ; *Jones v. Costlow,* 354 Pa. 245, 252-253, 47 A. 2d 259 (1946). However, this rule does not apply to an action for divorce which is a proceeding in rem to affect a status. "Thus, where the plaintiff is unsuccessful in obtaining a divorce on a specified ground, the judgment does not preclude him from maintaining another action for divorce on other grounds, even

---

[1] The Superior Court correctly determined the question of whether plaintiff had proven a wilful and malicious desertion by the defendant. When one spouse withdraws from the matrimonial domicile and the resulting separation continues for the required statutory period, the burden is upon the absenting spouse to prove consent to the withdrawal. *Duncan v. Duncan,* 171 Pa. Superior Ct. 69, 73, 90 A. 2d 357 (1952). And, the failure of the deserted spouse either to object to the withdrawal or request the absenting spouse to return does not establish that the withdrawal was consented to. *Procopio v. Procopio,* 174 Pa. Superior Ct. 157, 160, 100 A. 2d 115 (1953).

though they existed and were known to him prior to the bringing of the first action.[2] Restatement, supra §74, comment d at 337; *Reiter v. Reiter,* 159 Pa. Superior Ct. 344, 352, 48 A. 2d 66 (1946); *Commonwealth ex rel. Esenwein v. Esenwein,* 153 Pa. Superior Ct. 69, 75-76, 33 A. 2d 675 (1943), *aff'd* 348 Pa. 455, 35 A. 2d 335 (1944), *aff'd* 325 U. S. 279 (1945). See *Connor v. Connor,* 168 Pa. Superior Ct. 339, 346, 77 A. 2d 697 (1951). For this reason plaintiff's prior action for divorce based upon indignities to the person did not necessarily bar the successful prosecution of his second suit brought on the ground of desertion.

However, Mrs. Larsen contends that the judgment rendered against plaintiff in his earlier action for divorce on the ground of indignities creates a collateral estoppel as to the act of desertion now relied upon in the present proceeding. She reasons that since plaintiff testified to the alleged withdrawal in his earlier action for a divorce, the determinations of the court in that proceeding that plaintiff was not the innocent and injured spouse and had not proven indignities, established the fact that she had not wilfully and unjustifiably deserted the plaintiff, and consequently he may not now relitigate the issue.

It is true that if the parties to an action have had an opportunity to appear and be heard in a prior proceeding involving the same subject matter, all issues of fact which were actually adjudicated in the former action and essential to the judgment therein are concluded as between the parties even though the causes of action in the two proceedings are not identical. See *Thal v. Krawitz,* 365 Pa. 110, 112, 73 A. 2d 376 (1950);

---

[2] At the date of the institution of the first action for divorce, two years had not elapsed from the time of Mrs. Larsen's withdrawal from the plaintiff's home. Therefore, a divorce on the ground of desertion could not have been decreed in that proceeding.

*Wallace's Estate,* 316 Pa. 148, 153, 174 Atl. 397 (1934) ; Restatement, supra §68. (Note the limitations stated in Restatement, supra §§69, 71, 72). Here, however, this requirement is not satisfied.

Plaintiff's first action for divorce based upon indignities could only have been sustained by proof of a continuous course of conduct by his wife which made his life burdensome and his condition intolerable. No single indignity standing alone would have been sufficient to have warranted the entry of a decree. The circumstances concerning the alleged desertion were but one link in the necessary chain of proof. The triers of the facts could have believed the plaintiff's narration of those circumstances and still found that he was not the injured and innocent spouse. Thus, if they did not believe his testimony as to the alleged indignities other than the desertion, or if they believed that such indignities were not sufficient evidence of the required course of conduct, the dismissal of the action would have been proper. See *Reiter v. Reiter,* 159 Pa. Superior Ct. 344, 350-352, 48 A. 2d 66 (1946). (In prior action for divorce (1) on grounds of indignities to the person and (2) cruel and barbarous treatment, findings that plaintiff was not the injured and innocent spouse and had not proven indignities did not bar his subsequent action for divorce on ground of desertion although facts constituting asserted desertion occurred prior to, and were alleged in, the first proceeding).[3]

---

[3] The opinion in the *Reiter* case, written by Justice Arnold while a member of the Superior Court, contains the following pertinent passage: "As to the charge of indignities in the Philadelphia County case [the prior action for divorce] there was no res adjudicata [sic] because that charge could only be sustained by proof of a course of conduct, as to which the events of July 12, 1931, [the alleged desertion] were but a link in the chain, and if the libellant's narration of those events was believed by the triers

Hence, the issue of desertion was not determined in the first action so as to preclude the plaintiff from litigating the issue in this proceeding.

Finding no error in the dispositon made of this case by the Superior Court its order is affirmed.

Order affirmed.

DISSENTING OPINION BY MR. JUSTICE BELL:

The Superior Court reversed the lower Court and granted a divorce to Dr. Larsen, the plaintiff, on the ground of desertion. The majority opinion, which affirms the Superior Court, is based upon two fundamental fallacies—(a) there is only one question involved in this case, and (b) the refusal of a divorce on one ground is *never* a bar to a divorce on another ground.

### Facts

The parties were married in January, 1947,* it being the first marriage for Dr. Larsen and the second marriage for Mrs. Larsen, a widow. Two children were born to Mrs. Larsen as a result of her first marriage. The parties, almost from the beginning, were incompatible. On *October 15, 1947,* Mrs. Larsen, who was pregnant and afraid of a Caesarian operation, separated from Dr. Larsen *upon advice of her physician,* and the parties have not lived together since that date. Dr. Larsen made no objection to her leaving, and never once in the succeeding seven years asked her to return. Mrs. Larsen on *November 5, 1947,* obtained a non-support order against her husband.

In *April 1948,* Dr. Larsen commenced his *first* action in divorce against Mrs. Larsen on the ground of

of the facts, it still follows that the Philadelphia divorce would have had to be refused if the other links did not withstand the test of believability." 159 Pa. Superior Ct. at 351-352.

* The dates are important.

*indignities to the person.* Thereafter, Dr. Larsen filed an amended bill of particulars, which, inter alia, alleged desertion by Mrs. Larsen. The amended bill of particulars averred, inter alia: "On the 15th day of October, 1947, the respondent [Mrs. Larsen] left the domicile of libellant [Dr. Larsen] without justification or excuse other than that she alleged before the Court in a hearing on desertion and non-support that her Doctor advised her to do so for her happiness." The Master recommended that a divorce be refused, and in his report pertinently found: "It is the Master's opinion that libellant [Dr. Larsen] has failed to establish [1] not only the indignities on the part of the respondent [Mrs. Larsen], but also [2] that he is the injured and innocent spouse, *both of which he must prove** in order to establish his grounds for divorce . . . The proof submitted by libellant [Dr. Larsen] was not convincing, nor did it have the strength which could lead one to believe that these parties were guilty of anything more than mere incompatibility." The lower court adopted the findings of the master and dismissed plaintiff's libel. This decree and the court's findings were unappealed and consequently became final, binding and conclusive.

In *January 1955,* a *second* divorce action alleging *desertion* was commenced by Dr. Larsen. The defendant, Mrs. Larsen, filed an answer denying the allegation, and *affirmatively asserted the defense of res judicata.* The trial court overruled the motion to dismiss the petitioner's complaint on the ground of res judicata. Accordingly, a master in divorce was appointed, and subsequently he filed his report recommending that a divorce be granted *on exactly the same evidence* which had been held insufficient in the first

---

* Italics throughout, ours.

divorce action seven years previous. The lower court dismissed the (libel or) complaint on its merits. Assuming, arguendo, that plaintiff is not barred by res judicata or estoppel, plaintiff failed to establish that his wife was guilty of wilful and malicious desertion.

The Act of May 2, 1929[**], as amended, provides: "When a marriage has been . . . contracted . . . between two persons, it shall be lawful *for the innocent and injured spouse* to obtain a divorce from the bond of matrimony, whenever it shall be judged . . . that the other spouse: . . . (d) Shall have *committed wilful and malicious desertion, and* absence from the habitation of the injured and innocent spouse, *without a reasonable cause* for . . . two years; or . . . (f) Shall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome; . . .".

The lower court properly dismissed Dr. Larsen's complaint in divorce.

The Superior Court reversed the lower court's decree and granted a divorce to Dr. Larsen, based in my judgment (1) upon an inadequate review of the evidence, and (2) upon two basic errors of law. The two basic errors of law were (a) "res judicata", and (b) the definition, and the interpretation and application of "wilful and malicious desertion".

In this appeal, not one but two questions are involved: (1) whether the adjudication of the factual issues which were involved in the first divorce action in 1947 is res judicata or constitutes an estoppel and controls the present case, and (2) assuming arguendo, there was no res judicata or estoppel, whether plaintiff's evidence established a wilful and malicious desertion.

---

[**] P. L. 1237, §10.

In plaintiff's first divorce action, the lower court found as a fact that he *was not the innocent and injured spouse* even after he had (alleged and) testified that his wife left him on *October 15, 1947*. This was alleged to be the date of desertion *both in the first suit and in the second suit.* In the first suit the wife proved that she left her husband at the direction of her physician in order to protect her health. She was about to have a child and it was believed that a Caesarian operation was necessary. Not only did plaintiff live in a remote and, in the winter time, nearly inaccessible place from the hospital and from any doctor, but his conduct made his wife very nervous at a vitally important time of her life. Furthermore, after the birth of their child, *the wife obtained an order of support for herself, showing once again that her husband and not she was the person at fault.*

The Act of 1929 specifically provides that a divorce may be obtained only *by an innocent and injured spouse and then, inter alia, only if* (1) the other spouse shall have *committed wilful and malicious desertion, and* absence from the habitation of the injured and innocent spouse *without a reasonable cause* for two years; or (2) "Shall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome."

## Res Judicata

To become even more specific, the basic error in this Court's majority opinion is their failure to realize, or even to discuss, the indisputable fact that in the first divorce action for indignities, *an indispensable part of plaintiff's case* was to prove that he was the innocent and injured spouse, and the lower court, in a decision which was unappealed from, specifically found that he was not the injured and innocent spouse.

The Divorce Act states in the clearest possible language that a person can obtain a divorce only if he (or she) was "an innocent or injured spouse". That is an indispensable part of every plaintiff's case. The Act is so clear and specific on this point that authority to interpret it is unnecessary; but if it were, it could be found in *Olbum v. Olbum*, 183 Pa. Superior Ct. 5, 12, 128 A. 2d 125; *Angier v. Angier*, 63 Pa. 450, 458; *Matovcik v. Matovcik*, 173 Pa. Superior Ct. 267, 98 A. 2d 238.

In *Olbum v. Olbum*, 183 Pa. Superior Ct., supra, the Superior Court, speaking through Judge GUNTHER, said (page 12) : "It must appear clearly from the evidence that the plaintiff was the injured and innocent spouse in order to entitle him to a divorce. Matovcik v. Matovcik, 173 Pa. Superior Ct. 267, 98 A. 2d 238."

In *Matovcik v. Matovcik*, 173 Pa. Superior Ct., supra, the Superior Court, speaking through Judge WRIGHT, said (page 270) : "In an action for divorce on the ground of indignities, the burden is on the plaintiff to prove, not only that defendant by a course of conduct rendered plaintiff's condition intolerable and life burdensome, *but also that plaintiff was the innocent and injured spouse*: Wilson v. Wilson, 163 Pa. Superior Ct. 546, 63 A. 2d 104."

Proof by plaintiff that he was an innocent and injured spouse was, we repeat, an essential, necessary fact which was indispensable to his claim for divorce in his first divorce action and in his present divorce action; *it was found by the lower court adversely to him in his first divorce action;* and it defeats his present action, under the principle of res judicata or estoppel: *Helmig v. Rockwell Mfg. Co.*, 389 Pa. 21, 131 A. 2d 622; *Wallace's Estate*, 316 Pa. 148, 153, 174 A. 397; *Loughran v. Matylewicz*, 367 Pa. 593, 596, 81 A. 2d 879; *Reiter v. Reiter*, 159 Pa. Superior Ct., supra.

In *Helmig v. Rockwell Manufacturing Co.*, 389 Pa., supra, not only were the parties different, but the first case brought by plaintiff was an action of assumpsit, whereas the second case was an action of trespass. Nevertheless, this Court held that Helmig's action in trespass was barred by the doctrine of res judicata, and, quoting from *Wallace's Estate*, 316 Pa., supra, said (page 29) : " 'Broadly stated, the rule of res judicata is that when a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, *in respect to every fact which might properly be considered in reaching a judicial determination of the controversy,* and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter then before the court.' "

In *Commonwealth v. McEvans*, 92 Pa. Superior Ct. 124, the Court, speaking through President Judge PORTER, said (page 128) : *"When a fact has once been determined* in the course of a judicial proceeding and a final judgment rendered in accordance therewith, it cannot, so long as it remains unreversed, be again litigated between the same parties. *The estoppel* is not confined to the judgment, but *extends to all the facts involved in it as necessary steps, or the ground work upon which it must have been founded*: Altenburg v. Com., 126 Pa. 602; Com. v. Ellis, 160 Mass. 165; State v. Waterman, 87 Iowa 257; Carson v. The People, 36 Pac. Rep. 531 (Colo.)."

In *Loughran v. Matylewicz*, 367 Pa., supra, the Court said (page 596) : ". . . in William Baylor v. W. S. Decker et al., 133 Pa. 168, 19 A. 351 . . . the defendants attempted to establish their right to fish in the

waters of the pond and challenged Baylor's title. . . . Appellants urge that Baylor v. Decker, supra, is not res judicata as to the question of appellee's title. It is nonetheless true that Baylor's ownership of the pond was there in question and that the plaintiff and *some of the defendants* were privies in estate to appellant and appellee. Bowers' Estate, 240 Pa. 388, 87 A. 711, clearly states that the rule of res judicata applies with the same strictness where the cause of action, although not technically the same, *is so related to the cause of action in the prior litigation that the same matter essential to recovery in the second was determined in the first.* And see Ottinger v. Walling, 335 Pa. 77, 5 A. 2d 801; Wallace's Estate, 316 Pa. 148, 174 A. 397. That the first suit was at law and the next in equity is not material in the application of the rule of res judicata. The underlying purpose of the doctrine of res judicata is more than merely to serve the interest of one who relies on it; rather it is a matter of public policy based on the principle that the general welfare requires litigation not to be interminable. State Hospital for Criminal Insane v. Consolidated Water Supply Co., 267 Pa. 29, 110 A. 281; Baroutsis v. Gregory, 154 Pa. Superior Ct. 136, 140, 35 A. 2d 559."

*Thal v. Krawitz*, 365 Pa. 110, 73 A. 2d 376, relied upon by the majority opinion, sustains this opinion instead of the majority opinion. The Court, speaking through the present Chief Justice, there said (page 112) : " 'Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action . . .' "*

---

* We need not decide whether other statements made in the opinion have been followed or changed by subsequent decisions of this Court.

There isn't the slightest doubt that in the first divorce action one of the two indispensable facts involved in the second divorce action, namely, *was plaintiff an injured and innocent spouse, was actually, properly, expressly and specifically found—adversely to plaintiff* —in reaching a judicial determination of an *essential* issue which was *specifically* involved in both the first and second divorce cases. Under the authorities hereinabove cited and quoted, it is clear that defendant's plea of res judicata or estoppel should have been sustained by the court.

The majority opinion says: " '. . . where the plaintiff is unsuccessful in obtaining a divorce on a specified ground, the judgment does not preclude him from maintaining another action for divorce on other grounds, even though they existed and were known to him prior to the bringing of the first action.' . . . Reiter v. Reiter, 159 Pa. Superior Ct. 344, 352, 48 A. 2d 66 (1946) ; Commonwealth ex rel. Esenwein v. Esenwein, 153 Pa. Superior Ct. 69, 75-76, . . .. See Connor v. Connor, 168 Pa. Superior Ct. 339, . . .." While it is immaterial, this proposition as thus broadly stated is inaccurate. In *Connor v. Connor*, 168 Pa. Superior Ct., supra,—where the law was thus stated: "Refusal of a decree of divorce on one ground is not a bar to procuring it in another action on a different ground . . ."— plaintiff's complaint charging indignities and cruel and barbarous treatment was dismissed by the court on September 29, 1947. Nearly a year later, to wit, on August 13, 1948, plaintiff filed a new complaint charging *adultery* which occurred *subsequent* to the first divorce proceeding.

In *Commonwealth ex rel. Esenwein v. Esenwein*, 153 Pa. Superior Ct., supra, the case turned upon the constitutionality of a divorce decree obtained in Nevada and whether it was entitled to full faith and credit in

Pennsylvania. See: *Commonwealth ex rel. Esenwein v. Esenwein,* 348 Pa. 455, 35 A. 2d 335; 325 U. S. 279. In *1920* plaintiff had instituted divorce proceedings in Pennsylvania on the ground of indignities. His libel was dismissed by this Court (312 Pa. 77, 167 A. 350). In *1939* the husband-plaintiff again instituted divorce proceedings in Pennsylvania, charging desertion. The Superior Court reversed the lower court, which had granted plaintiff a divorce (141 Pa. Superior Ct. 604, 15 A. 2d 735). On *September 8, 1941,* the husband was granted a divorce in Nevada on a ground not recognized by our divorce laws. The Superior Court said: "In view of our conclusion, it is unnecessary to discuss at length the question whether the Nevada decree was invalid on the additional ground that, because of the previous [divorce] decisions of this court against him, appellant's right to a divorce was res adjudicata. Refusal of a divorce on one ground is not a bar to procuring it in another action on a different ground." The *different* ground arose in each case *after* the first and *after* the second divorce was respectively refused. This dicta was a correct statement of the law as applicable to the facts in that case, but furnishes no support—even if it were binding on us, which it is not—for the broad rule which the majority erroneously extends to every case.

Analysis and authority alike demonstrate that the broad proposition of law which is asserted in the majority opinion to be applicable in every case, is inaccurate and unsound. If, for example, a husband who believed his wife to be guilty of both desertion and adultery, brought a divorce action alleging only desertion, in order to shield his wife and his children, and his divorce was refused because he failed to prove wilful and malicious desertion for two years, he would not be estopped from bringing a new action on the ground of adultery even though each had occurred prior to the institution of his first divorce action. On the other

hand, if his first divorce action for desertion (or for indignities) was dismissed because he himself had been guilty of adultery, or *for any other reason he was not the innocent spouse,* he could not, by bringing a new divorce action charging his wife with adultery which occurred prior to the institution of his first divorce case, succeed, because the fact that he was not an innocent spouse had already been adjudicated adversely to him in the first divorce action. *Reiter v. Reiter,* 159 Pa. Superior Ct. 344, 48 A. 2d 66, erroneously relied upon by the majority, illustrates the dividing line which the majority has failed to recognize.

In *Reiter v. Reiter,* the husband filed a libel in divorce on October 13, *1941,* charging his wife with *desertion,* commencing *July 12, 1931.* The gist of his case was founded upon his testimony that he left their common home because his wife threatened him and ordered him out of the house. The court dismissed his libel. The husband on February 25, *1933,* had brought an action for divorce against his wife charging her *with cruel and barbarous treatment and indignities.* The bill of particulars in the first divorce case *included "the events of July 12, 1931,* which Dr. Reiter now states forced him to leave home." The Superior Court reversed the lower court and *held that the plea of res judicata should have been sustained.* The Court said (pages 351-352, 353):

"In the one sense in which the term res adjudicata is used, the plea failed because there was no identity of subject matter, the first cause of action being for cruel and barbarous treatment and for indignities, and the present action being on the ground of desertion: Commonwealth ex rel. Esenwein v. Esenwein, 153 Pa. Superior Ct. 69, 33 A. 2d 675; Viney v. Viney, 151 Pa. Superior Ct. 86, 29 A. 2d 437; Kelly v. Kelly, 51 Pa. Superior Ct. 603. As to this type of res adjudicata the court's ruling was correct.

"But there is a second type of res adjudicata. In Wallace's Estate, 316 Pa. 148, 153, 174 A. 397, it was said: 'Broadly stated, the rule of res judicata is that when a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, *in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged,* as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter before the court.' See also Schlosberg et ux. v. City of New Castle, 100 Pa. Superior Ct. 139; Federal Land Bank of Baltimore v. Putnam et al., 350 Pa. 533, 39 A. 2d 586; Nevling v. Commercial Credit Company, 156 Pa. Superior Ct. 31, 39 A. 2d 266; Miller et ux. v. Dierken et al., 157 Pa. Superior Ct. 69, 41 A. 2d 438. . . .

"But as to the charge of cruel and barbarous treatment in the Philadelphia case, a different situation obtains. In the Philadelphia case the libellant was bound to litigate every act of cruel and barbarous treatment alleged to have been committed by the respondent upon him prior to the filing of the libel. The libel having been filed April 3, 1933, any act of cruel and barbarous treatment committed July 12, 1931 has to be litigated in that case. Even more so is this true when the libellant's bill of particulars pleaded the events of July 12, 1931. . . .

"If the libellant is entitled to a divorce on the ground of desertion in the present case, it is because his life was endangered or there was a reasonable apprehension thereof. The endangering of life, or the reasonable apprehension thereof, is an act of cruel and barbarous treatment. As such, the libellant was bound to litigate it in the Philadelphia action.

"The court should have admitted the respondent's offer of the record in the Philadelphia divorce action, *and should have sustained the plea of res adjudicata,* not on the ground of identity of parties, cause of action, etc., but on the other ground, which is in effect an estoppel as between the parties in the first case to relitigate any question cognizable in that case. . . ."

It is clear that the law as broadly stated by the majority is erroneous. A more accurate statement of the law would be that where a plaintiff is unsuccessful in obtaining a divorce on a specified ground, the judgment will not preclude him from obtaining a divorce on other grounds (a) if the other grounds arose after his first divorce action ,or (b) if they were based upon facts which were not adjudicated against him in his first divorce action.

## Desertion

Assuming, arguendo, that neither res judicata nor estoppel applies to plaintiff's present action for divorce on the ground of desertion, the second basic error made by the Superior Court—but not even discussed by this Court in the majority opinion—was (a) its interpretation of "wilful and malicious desertion" and (b) the burden of proof thereunder. The Superior Court held that if defendant left the marital home and was absent for two years, the burden was on her to prove that her "leaving" was justifiable or was a consentable separation. That is an obviously unjustifiable interpretation of the language, meaning and intent of the aforesaid Legislative Act. Plaintiff does not prove the required statutory wilful and malicious desertion *by merely proving an absence of his spouse* from his habitation for two years, nor does such proof even make out a prima facie case. *Wilful and malicious desertion as used in the Act (1) means intentionally, deliberately and maliciously leaving the other spouse*

*and absenting herself from the habitation of the innocent and injured spouse unjustifiably and without the consent of the other for two years;* and (2) the plaintiff without the slightest doubt has the burden of proving by clear and convincing evidence *all* the facts which are an essential part of "wilful and malicious desertion." See *McKrell v. McKrell,* 352 Pa. 173, 183, 42 A. 2d 609. Even if all of plaintiff's testimony is believed and all his wife's testimony is disbelieved (contrary to the findings of the lower court in both cases), plaintiff utterly failed to prove by clear and convincing evidence a wilful and malicious desertion by his wife.* *He made not the slightest objection to defendant leaving him at the time of her alleged desertion in October (15) 1947,* and never once in the next seven years asked her to return.** He testified (in the present divorce case) as follows: "Q. Doctor, were you in the home on October 15, 1947, at the time you alleged Mary left you? A. No. Q. Were you there any time that Mary was there during the day? A. As I recall, she was there in the morning when I left for the office—for the hospital, rather. Q. After Mary left on October 15, 1947, did you at any time ever ask her to return to your home to live with you? A. No, since I had protested her leaving when she told me about it. Q. When was that? A. *The latter part of September.* Q. What did you say to her? A. *I said I couldn't see any point in her leaving.* Q. *Did you ask her to stay at that time?* A. *I didn't get anything further said because she turned away, walked away."*

---

* Moreover, if defendant's evidence is believed, she had a justifiable reason to leave her husband, namely, her doctor's advice, and plaintiff admits that he never thereafter asked her to return.

** We may add that never once during the seven years of this consentable separation, did plaintiff speak to or inquire about the health or welfare of their child who was born December 8, 1947.

This established, *at best for plaintiff,* a consentable separation; to hold otherwise would unduly strain our credulity, or would require an express agreement of consent to the separation, which no one contends is a proper construction of the law. *Procopio v. Procopio,* 174 Pa. Superior Ct. 157, 100 A. 2d 115, and any other Superior Court case which holds that "where a wife lives apart from her husband for over two years the burden is upon her to prove consent or a reasonable cause for her withdrawal from the matrimonial domicile" erroneously interprets the clear provisions of the Divorce Act, and, on this point, should be reversed by this Court.

In Pennsylvania, marriage has heretofore been considered sacred. Our authorities hold that the Commonwealth is vitally interested in preserving marriage. Pennsylvania should not be classified as a second Reno. "Marriage is not merely a personal relation founded upon a civil contract, but it is more, it is a legal [and spiritual] status of the parties in which the state [and the Church] is vitally interested in its continuance, and cannot be cancelled or rescinded by divorce proceedings *save for grave reasons*: Latshaw v. Latshaw, 18 Pa. Superior Ct. 465, 467, . . .": *Upperman v. Upperman,* 119 Pa. Superior Ct. 341, 181 A. 252.

When one court finds that *plaintiff was not an innocent and injured spouse,* and seven years later another court finds *upon the same evidence* that plaintiff was an innocent and injured spouse, that ignores or obliterates the principle of res judicata or estoppel, and makes a mockery of Justice, as well as of the Courts. Equally important, plaintiff failed to prove a wilful and malicious desertion and an absence from his home without *his consent* and without a reasonable cause for two years; even if his evidence (which the lower Court twice disbelieved) is believed, he

proved merely a consentable separation.

For each of the foregoing reasons I would reverse the judgment of the Superior Court, and I would affirm the decree of the lower court which dismissed plaintiff's petition for divorce.